WILLIAM J. MORAN & another *vs.* SECRETARY OF THE
COMMONWEALTH & another
(and three companion cases).

Suffolk.    May 8, 1964. — May 15, 1964.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Public Board.    Constitutional Law,* Reapportionment of districts.    *General Court.    Public Officer.    Mandamus.*

St. 1963, c. 666, § 2, establishing boards of special commissioners to divide
the counties into representative districts, imported that each commis-
sion, as a public board composed of civil officers, should act officially
only at a duly constituted meeting which all members had reasonable
notice of and an opportunity to attend, rather than by the agreement
of a majority of the members separately obtained.    [504]

Where a special commission established under St. 1963, c. 666, § 2, filed
with the Secretary of the Commonwealth a report signed by all five
members dividing a county into representative districts, but the follow-
ing day two members of the commission met alone and prepared and
signed a second report purporting to amend the first report by moving
a precinct of a town from one district to another, caused the second
report to be carried to and signed by a third member of the commis-
sion, telephoned the two remaining members of the commission, who had
had no prior notice of any meeting on that day, and apprised them of
the second report, and then filed it without the signatures of those two
members, the second report was of no legal effect.    [504]

Registered voters residing in a county wherein a board of special commis-
sioners had been established to divide the county into representative
districts had standing under St. 1963, c. 666, § 3, and under general
principles, to enforce by mandamus the public duty of the Secretary of
the Commonwealth to act in accordance with a valid report filed by the
commissioners and to disregard an invalid second report filed by them.
[504–505]

FOUR PETITIONS for writs of mandamus filed in the Su-
preme Judicial Court for the county of Suffolk on Novem-
ber 13, 1963.

The cases were reserved and reported by *Cutter, J.*

*Frank N. Dardeno* for William J. Moran & another.

*James W. Kelleher* for James J. Foley, Jr., & others.

*John E. Sullivan,* Assistant Attorney General, for the
respondents.

CUTTER, J.   In each of these cases, a writ of mandamus
is sought against the Secretary of the Commonwealth, in
connection with the preparation of nomination papers and
ballots and the performance of other duties with respect to
the election of representatives in the Legislature for Mid-
dlesex County.   The petitioners desire to compel the Sec-
retary to use the description of representative districts con-
tained in the first report (filed October 14, 1963) of the spe-
cial commission (the Middlesex commission) to divide Mid-
dlesex County into representative districts (St. 1963, c. 666)
rather than to give any effect to a later purported report
(the second report) filed on October 15, 1963.   The later re-
port attempts to modify two of the representative districts
described in the first report.   The cases have been reserved
by a single justice upon the pleadings and a statement of
agreed facts for our determination.

Each petitioner is a resident either of Arlington or of
Somerville.   In the Moran case, each petitioner is a reg-
istered voter in ward 7, precinct 3, in Somerville.   The peti-
tioner Wright is a duly registered voter in precinct 7 in
Arlington.   The Middlesex commission consisted of the re-
spondents Breen, Valenti, Ellis, O'Brien, and Cahill.   On
October 14, 1963, all five commission members caused to be
filed in the office of the Secretary of the Commonwealth the
return required by St. 1963, c. 666, § 2,[1] to carry out the
mandate of art. 21 of the Amendments to the Constitution
of the Commonwealth as appearing in art. 71 of the Amend-
ments.[2]   This first report allocated Middlesex County's

---

[1] Section 2 reads in part as follows: "In each county . . . [subject to an
exception not relevant] there is . . . established a bipartisan board of special
commissioners to divide such county . . . into representative districts and to
assign representatives thereto, which board shall consist of five persons . . . .
[E]ach such board shall organize by the choice of one member as chairman
and by the appointment of a secretary . . . .   [I]n each . . . county other than
Suffolk the board shall assemble at a shire town of its county, within the time
required by . . . Article XXI [of the Amendments to the Massachusetts Con-
stitution], as . . . appearing [in art. LXXI], shall proceed to divide such
county into representative districts, and shall assign representatives thereto, in
accordance with said Article, and shall make return thereof as therein required
. . . not later than . . . [October 15, 1963].   Each such county . . . shall pro-
vide the board for such county with a suitable office and room for hearings.
. . ."   See concerning St. 1963, c. 666, *Opinion of the Justices,* 346 Mass. 791.

[2] The amended art. 21 provides for an enumeration of the inhabitants of each
ward of each city and of each town and certain precincts in towns every ten

fifty-five representatives among thirty-five districts.[3]    All
five members of the Middlesex commission signed this re-
port, with members O'Brien and Cahill dissenting as to dis-
tricts 2 and 3.

On October 15, 1963, Breen and Ellis of the Middlesex
commission met in Boston in Suffolk County and prepared a
paper (the second report), the relevant parts of which are
set out in the margin.[4]    Valenti, Cahill, and O'Brien were
not present.    Breen and Ellis then caused the second report
to be carried to Valenti's place of employment in Boston
where Valenti signed it.    Thereafter Breen and Ellis called
Cahill and O'Brien by telephone and informed them of the
paper prepared by Breen and Ellis and executed by Breen,
Ellis, and Valenti.    Breen and Ellis then caused the second

years, which shall be the basis ''for determining the representative districts for
the ten year period beginning'' in the fourth following January.    The number
of representatives for each county is to be determined by the Legislature.    This
was done by St. 1963, c. 666, § 1, and Middlesex County was allotted fifty-five
representatives.    Article 21 then provides that ''county commissioners or other
body acting as such or, in lieu thereof, such board of special commissioners in
each county as may for that purpose be provided by law, shall . . . within such
. . . period as the general court may by law provide, assemble at a shire town
of their respective counties, and proceed, as soon as may be, to divide the same
into representative districts of contiguous territory and assign representatives
thereto, so that each representative in such county will represent an equal num-
ber of legal voters, as nearly as may be; and such districts shall be so formed
that no town containing less than twelve thousand inhabitants according to said
census, no precinct of any other town and no ward of a city shall be divided
therefor, nor shall any district be made which shall be entitled to elect more
than three representatives.    The general court may by law limit the time within
which judicial proceedings may be instituted calling in question any such ap-
portionment, division or assignment. . . .    The districts in each county shall
be numbered by the board creating the same, and a description of each, with
the numbers thereof and the number of legal voters therein, shall be returned by
the board, to the secretary of the commonwealth, the county treasurer of such
county, and to the clerk of every city or town in such county, to be filed and
kept in their respective offices. . . .''

[3] The report created three districts with three representatives, fourteen dis-
tricts with two representatives, and eighteen districts with one representative.

[4] ''October 15, 1963    At a meeting of the Commission held October 15, 1963,
the Commission voted to amend their report of October 14, 1963 as follows:
District 25 . . . Precincts 1, 3, 5, and 7 of . . . Arlington and Wards 6 and 7
of . . . Somerville, having 20,032 legal voters and 2 representatives.    District
28 . . . Precincts 2, 4, 6, 9, 11, and 13 of . . . Arlington having 11,070 legal
voters and 1 representative.    /s/ Joseph L. Breen, Jr., Chairman    /s/ Gemma
M. Valenti    /s/ Alexander Ellis, Jr.''    The first report described districts 25
and 28 as follows: ''District 25.    Precincts 1, 3 and 5 of . . . Arlington, and
Wards 6 and 7 of . . . Somerville, having 18,475 legal voters and two repre-
sentatives. . . .    District 28.    Precincts 2, 4, 6, 7, 9, 11, and 13 of . . . Arling-
ton, having 12,627 legal voters and one representative.''

report to be filed with the Secretary of the Commonwealth
at 4:55 P.M. on October 15. Apart from these telephone
calls, Cahill and O'Brien had no notice of any meeting to be
held on October 15, 1963.

The effect of the attempted amendment was to move pre-
cinct 7 of Arlington from district 28 to district 25. The re-
spondents in their brief say that the unit representation on
the average should be one representative for each 10,460
voters. The number of voters to be represented in districts
25 and 28 in accordance with the two reports was as follows:

| DISTRICT | FIRST REPORT | SECOND REPORT |
|---|---|---|
| 25 | 18,475 or | 20,032 or |
| (two | 9,238 voters per | 10,016 voters per |
| representatives) | representative | representative |
| 28 | 12,627 | 11,070 |

It has not been argued that the distribution of voters to
these two districts, as made by the first report, was so un-
equal as to be invalid. See *Attorney Gen.* v. *Suffolk County
Apportionment Commrs.* 224 Mass. 598, 606–607. We as-
sume that the first report was a sufficient "approximation
to equality" (p. 607).

Statute 1963, c. 666, § 4, provides that "the existence of
each board established by section two . . . [of which the
Middlesex Commission was one, see fn. 1] shall terminate
when the purposes for which such board was . . . estab-
lished have been fully performed." By § 2 (see fn. 1)
October 15, 1963, was the last date for filing the return or
report called for in the section and the revised art. 21 of
the Amendments (fn. 2). The record gives no explanation
of the reasons for the attempt by the second report to
change districts 25 and 28. It is not argued that the second
report was filed to correct a mere clerical error or some
inadvertence.

1. The petitioners contend that the Middlesex commis-
sion ceased to exist after October 14, 1963, when the first
report was filed. They argue that the commission fully ac-
complished its purpose by filing the first report and there-
after, because of § 4 among other reasons, ceased to have

authority to act. To support this contention they rely upon *Opinion of the Justices,* 10 Gray, 613, 614–615, *Cabot* v. *Corcoran,* 332 Mass. 44, 48, and Rep. A. G., Pub. Doc. No. 12, 1955, pp. 98, 99–100. We think that it is not necessary to pass upon this question, for, even if the Middlesex commission had power to act on October 15, 1963, it did not do so effectively.

· 2. We assume that the Middlesex commission could act by a majority vote of all its members. See G. L. c. 4, § 6, Fifth. We think, however, that it was intended that the commission, as a public board composed of civil officers (see *Opinion of the Justices,* 303 Mass. 615, 625, 630), should take official action only at a duly constituted meeting of which all the members had reasonable notice and at which all the members had opportunity to be present, rather than by the agreement of a majority of the members separately obtained. See *Carbone, Inc.* v. *Kelly,* 289 Mass. 602, 605; *Real Properties, Inc.* v. *Board of Appeal of Boston,* 311 Mass. 430, 433–435; *Reilly* v. *Selectmen of Framingham,* 345 Mass. 363, 365–366.

The undisputed facts show no prior notice to O'Brien and Cahill of the purported meeting on October 15, prior to the informal meeting of Breen and Ellis. A majority of the members of the Middlesex commission are not shown to have met on that day in one place. Even apart from the defect of want of notice, the separate action of Valenti in signing the second report was without significance at least where there was no meeting of a majority of the commission. O'Brien and Cahill did not sign the second report. We hold that the purported action of Breen, Ellis, and Valenti on October 15, 1963, was without any legal effect.[5]

3. The petitioners have standing to maintain these petitions under St. 1963, c. 666, § 3, and under general principles authorizing a writ of mandamus to enforce a public duty. See *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, 92; *Nickols* v. *Commissioners of Middlesex County,* 341

---

[5] We need not decide whether, under the 1963 statute and the revised art. 21 of the Amendments (see fn. 2), it was necessary for the Middlesex commission to hold all meetings in a shire town in that county.

Mass. 13, 18. The Secretary of the Commonwealth is under a public duty to act in accordance with the first report, the only effective report or return made by the Middlesex commission.

4. Judgment in each case is to be entered commanding the Secretary of the Commonwealth (1) to prepare nomination papers and ballots, and to perform any and all other duties imposed upon him by law in which the representative districts for Middlesex County established in 1963 may be of significance, in accordance with the description of representative districts in Middlesex County, including districts 25 and 28, contained in the first report or return of the Middlesex commissioners filed on October 14, 1963, and (2) to disregard the purported second report or return filed October 15, 1963.

*So ordered.*