GEORGE H. HARRIS & others[1] *vs.* TOWN OF WAYLAND
& others.[2]

Middlesex.   February 9, 1984. — June 19, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Public Land.   Municipal Corporations,* Real property.

A town meeting vote authorizing the purchase of a parcel of undeveloped
land "on behalf of the Town for school purposes," although unaccom-
panied by a separate vote placing the property in the charge of the town's
school committee, was sufficient, when coupled with the attendant cir-
cumstances, to indicate that the town intended to place the property in
the control of the school committee pursuant to G. L. c. 40, § 3. [240-242]
Where certain undeveloped land had been purchased by a town for school
purposes, conveyance of the land to a housing authority for the construc-
tion of low income housing required a two-thirds vote of a town meeting
pursuant to G. L. c. 40, § 15A. [242-244]


CIVIL ACTION commenced in the Superior Court Department
on December 7, 1981.

The case was heard by *Kelley,* J., on motions for summary
judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*James E. McGuire* for the plaintiffs.

*Kenneth J. Mickiewicz* for the town of Wayland & another.

*Andrew D. Epstein* for Wayland Housing Authority.

---

[1] Barbara R. Harris, Herman Bruckner, Hollis Ann Bruckner, Leonard
L. Canter, Jane Canter, Preston B. Keith, Nancy M. Keith, William J.
Meek, Carolyn B. Meek, John L. Moss, Brian C. Phelan, Diane S. Phelan,
James B. Plate, Carolyn E. Plate, William S. Roman, Sally A. Todd,
Sheldon Viles, Margaret Viles.

[2] The board of selectmen of Wayland and the Wayland housing authority.
The school committee of Wayland, while not a party to this appeal, is a
defendant in the underlying action.

*Austin Broadhurst,* for Massachusetts Association of School Committees, Inc., amicus curiae, submitted a brief.

LYNCH, J. The plaintiffs are residents, property owners and voters of the town of Wayland (town). They oppose the sale of certain town land (Orchard Lane) to the Wayland housing authority for the purpose of constructing elderly and low income housing. They brought this action in the Superior Court pursuant to G. L. c. 231A and c. 249, § 5. On cross motions for summary judgment, judgments were entered for the defendants but the rights of the parties were not explicitly declared. Mass. R. Civ. P. 56, 365 Mass. 824 (1974). Although it did not disagree with the result, the Appeals Court vacated the judgments of the Superior Court and ordered that a judgment be entered declaring the town meeting authorization for the sale of Orchard Lane to be valid. *Harris* v. *Wayland,* 16 Mass. App. Ct. 583, 587 (1983). We granted the plaintiffs' application for further appellate review. Based on the reasons that follow, we hold that the purported authorization by majority vote of the town for the sale of Orchard Lane was invalid.

There is no dispute concerning the material facts. At a special town meeting in 1956, by a vote of 503 to 17, the town authorized the board of selectmen (selectmen) "to purchase, take by eminent domain or otherwise acquire for the Town for school purposes" a parcel of land on Orchard Lane, and appropriated $13,750 for this purpose.[3] Later that year, the town purchased the property. The deed contained no restrictions on the use of the land. The town took no further action concerning Orchard Lane until November, 1981. The land has been vacant since 1956 and has never been used for school, or any other, purposes. In April, 1981, in response to a request by the housing authority, the superintendent of schools wrote that the school committee did not think it would be feasible to split the Orchard Lane site. The letter did not indicate that the school committee had immediate plans to use the property but referred to the site

---

[3] These two votes were in accordance with G. L. c. 40, § 14, which requires that a decision to purchase or to acquire by eminent domain be authorized by a majority vote of the town and an appropriation be approved by a two-thirds vote of the town.

as being "in reserve for future use." At its regular meeting in October, 1981, the school committee voted not to abandon Orchard Lane to the selectmen. However, the school committee also stated that, if the town should vote to transfer Orchard Lane to the authority, it would take whatever action was necessary to release the site. Articles 5 and 6 of the warrant for the special town meeting of November, 1981, both proposed by the housing authority, concerned Orchard Lane. Article 5 requested the town to instruct the school committee to "convey" the vacant site to the selectmen.[4] Article 6 requested the town to authorize the selectmen to "convey" Orchard Lane to the housing authority.[5] The comments to art. 6 referred to Orchard Lane as "currently under the jurisdiction of the School Committee, as the result of a 1956 Town vote to purchase the land for possible future school building needs." At the town meeting, art. 5 passed by a majority but not by a two-thirds vote. Article 6 also passed by majority vote. The town also voted, by more than two thirds, to authorize the selectmen to transfer to the conservation commission any portion of Orchard Lane not conveyed to the housing authority.

The plaintiffs argue that Orchard Lane was in the charge of the school committee, and therefore the sale of the property is governed by G. L. c. 40, § 15A, particularly the provision requiring a two-thirds vote of the town before the care, custody, management, and control of the land can be transferred to another municipal department.[6] Alternatively, they contend that, even if Orchard Lane were in the charge of the selectmen, G. L. c. 40, § 15A, which applies to *transfers* of control from

---

[4] The comments to art. 5 used the word "transfer."

[5] The comments to art. 6 used the word "sell."

[6] General Laws c. 40, § 15A, as appearing in St. 1954, c. 105, provides in pertinent part: "Whenever a board or officer having charge of land . . . shall determine that such land is no longer needed for such purpose, . . . such board or officer shall forthwith give notice of such determination to the . . . board of selectmen of the town. At any time after the receipt of such notice . . . the town by a two thirds vote at a regular or special town meeting, may transfer the care, custody, management and control of such land to the same or another board or officer of the city or town for another specific municipal purpose . . . ."

one town board or officer to the same or another town board or officer for another specific municipal purpose, also governs the *sale* of the land to the authority.

The defendants counter that the school committee did not have control of the property and therefore the sale is governed by G. L. c. 40, § 3, as amended by St. 1982, c. 634, § 6, which permits a town to convey real estate "by a deed of its selectmen . . . duly authorized."[7] The defendants also argue that § 15A applies to transfers, but not to sales, that the housing authority is not a town board, and that the construction of elderly and low income housing is not a "specific municipal purpose" within the meaning of § 15A.

1. *Control of Orchard Lane.* We agree with the plaintiffs that Orchard Lane was in the control of the school committee. The relevant statutes indicate that there are several ways municipal land can be held. G. L. c. 40, §§ 3, 14, 15, and 15A. It can be in the charge of a particular board or officer, or the selectmen for a particular municipal purpose, or the selectmen as part of the town's general corporate undeveloped property.[8] The fact that land is undeveloped does not automatically place it in the last category. If land is held for a particular municipal purpose, the provisions of G. L. c. 40, § 3, that "[a] town . . . may convey [real estate] by a deed of its selectmen . . . duly authorized," is not applicable until something else has been done: until it has been determined, in accordance with G. L. c. 40, § 15A, that the land is no longer needed by the particular board or for the particular purpose.

Although there was no separate vote placing the property in the charge of the school committee, we conclude that the vote by which the property was acquired was sufficient in this

---

[7] Section 3 does not specify the vote needed to authorize the selectmen to convey real estate. The defendants argue that, since the law does not specify the vote required, a majority vote is sufficient. See 4 E. McQuillin, Municipal Corporations § 13.31b (3d ed. rev. 1979).

[8] General Laws c. 40, § 3, as amended by St. 1982, c. 634, § 6, provides in pertinent part: "All real estate or personal property of the town, not by law or by vote of the town placed in the charge of any particular board, officer or department, shall be under the control of the selectmen . . . ."

respect. The vote taken at the 1956 town meeting authorized the purchase of Orchard Lane "on behalf of the Town for school purposes." In addition, the description in the deed by which the property was acquired relied upon a plan "Showing Land Taken For School Purposes." The warrant for the special town meeting of November 18, 1981, which describes the parcel as being under the jurisdiction of the school committee, shows that prior to the events that precipitated this action it was commonly understood that the property remained in the charge of the school committee in the twenty-five years that it had been held by the town.

In hindsight it would have been preferable if the town had been more explicit as to its intention to place Orchard Lane in the control of the school committee. For instance, action under the 1956 warrant article could have authorized the purchase on behalf of the town for school purposes *and* could have placed the land in the control of the school committee. However, the warrant article as it read, coupled with all the attendant circumstances, was sufficient to indicate that the town intended to place the property in the charge of the school committee. General Laws c. 40, § 3, does not require a separate town vote concerning the custody of property acquired, when the town's intention is indicated in some other way.

Although the precise question of what it takes to put a piece of property in the control of a particular town board or officer pursuant to G. L. c. 40, § 3, has not arisen before, cases which refer to land acquired by a city or town usually refer to that land as having been acquired for a specific purpose. In *Bouchard* v. *Haverhill,* 342 Mass. 1, 2 (1961), for example, the only vote referred to is the one authorizing the city to acquire title by eminent domain "for the purposes of constructing a new school building." Similarly, in *Harrington* v. *Worcester,* 345 Mass. 166, 167 (1962), land was acquired "for school purposes." See also *Chelmsford* v. *DiBiase,* 370 Mass. 90, 91 (1976) (land taken "for conservation purposes"); *Walker* v. *Medford,* 272 Mass. 161, 162 (1930) (land taken "for high-

way purposes").[9] On the other hand, in *Jacobson* v. *Parks &*
*Recreation Comm'n of Boston,* 345 Mass. 641, 643 (1963),
land was purchased by the city with "no specific purpose recited
in the deeds, 'to have and to hold . . . in fee simple forever.'"
In sum, if Orchard Lane was to be acquired for general munic-
ipal purposes or for no specific purpose, the town's action
under the warrant article should have so provided.[10]

The fact that Orchard Lane has never been used for school
purposes does not affect the result. It is not unreasonable for
the school committee to refrain from developing property unless
and until there is a need to do so. To require town boards in
control of land to do otherwise would encourage unnecessary
or premature development and preclude careful planning for
future needs. The fact that both the school committee and the
board of selectmen assumed Orchard Lane was in the control
of the school committee since 1956, even though it was never
developed, indicates that the town did not regard lack of use
as affecting jurisdiction.

2. *Sale or transfer.* Since Orchard Lane is in the control
of the school committee, we must now determine whether the
provisions of G. L. c. 40, § 15A, apply. Ultimately, the issue
is whether the transfer of Orchard Lane to the selectmen for

---

[9] Although the cases cited involve taking by eminent domain rather than
purchase, we conclude that the way the towns' intentions are expressed in
these cases is indicative of customary town practice. The fact that control
of the land was not later questioned in any of these cases means that there
is no precedent for the issue before us, but does not decrease the evidentiary
value of a town's usual manner of indicating its intentions.

[10] It is the designation of Orchard Lane's acquisition as being "for school
purposes" that distinguishes this case from *Muir* v. *Leominster,* 2 Mass. App.
Ct. 587 (1974), relied on by the defendants. In *Muir,* the Appeals Court held
that land conveyed to the city with no limitation on its use either in the deed
or in the vote of the city council accepting the conveyance was part of the
city's general corporate property, even though it had been used as a playground
and for other recreational purposes for thirty years. The court based its decision
on the absence of restriction in the deed and the fact that there had been "no
formal dedication by the city of this area as park land." *Id.* at 592. Without
undertaking a definitive interpretation of the term "formal dedication," we find
that there was sufficient indication of the town's intent to dedicate Orchard
Lane to school use to distinguish this case from *Muir.*

the purpose of sale to the housing authority for the construction of elderly and low income housing is a "transfer . . . to . . . another board . . . of the . . . town for another specific municipal purpose." We think that it is.

The most obvious reading of G. L. c. 40, § 15A, seems to require this result. Since the land is now in the charge of the school committee for school purposes, a transfer to the board of selectmen for the purpose of sale is clearly a transfer "for another specific municipal purpose." Although towns are not in the business of buying and selling land, a sale of land which has been determined to be no longer needed is a perfectly reasonable municipal purpose. Although art. 5 of the warrant for the special town meeting of November 18, 1981, does not use the word "transfer," it is a proposal that the town instruct the school committee to "convey, abandon, release or otherwise dispose of [the property] to the Board of Selectmen." It is difficult to see how this differs from a "transfer."

A word is needed here to clarify the relationship between G. L. c. 40, § 15A, and G. L. c. 40, § 3. The two statutes do not usually present alternative ways for the selectmen to convey town land. A sale of town land is a specific municipal purpose. Therefore, whenever town land that is held for any other specific purpose is to be sold, there must be a two-thirds vote pursuant to G. L. c. 40, § 15A, to authorize the transfer of the land from one purpose to the other. Once the transfer for the purpose of sale has been authorized pursuant to G. L. c. 40, § 15A, the selectmen, duly authorized, may consummate the sale by a deed, pursuant to G. L. c. 40, § 3. The language of G. L. c. 40, § 15A, makes it clear that this two-step procedure applies even if the land was in the charge of the selectmen rather than another board or officer. The section refers to the transfer of the custody of the land "*to the same* or another board or officer of the city or town *for another specific municipal purpose*" (emphasis supplied). It is clear, therefore, that the provisions of G. L. c. 40, § 3, do not become operative until a transfer has been approved pursuant to G. L. c. 40, § 15A.

The town meeting warrant involved in this case presents a perfect illustration of the way this two-step process should work. Article 5 proposed that the school committee transfer control of the land to the board of selectmen for the purpose of sale to the housing authority. Pursuant to G. L. c. 40, § 15A, this requires a two-thirds vote of the town.[11] Article 6 proposed that the board of selectmen, once in charge of Orchard Lane, sell it to the housing authority. Pursuant to G. L. c. 40, § 3, this requires a majority vote.

Since transfer of Orchard Lane to the selectmen in order that it might be conveyed was not approved by a two-thirds vote of the town, Orchard Lane remains in the control of the school committee.

The judgment of the Superior Court is vacated and the case is remanded for entry of judgment declaring that the majority vote of the special town meeting on November 19, 1981, on art. 5 did not transfer the care, custody, management, and control of the Orchard Lane property from the school committee to the board of selectmen.

*So ordered.*

---

[11] The fact that the school committee did not make its formal determination that it no longer needed the land before the town voted to authorize the sale has no practical significance. Formal determination can come after the vote as well as before, *Bouchard* v. *Haverhill,* 342 Mass. 1, 4 (1961), and in this case the school committee had indicated that it would release the land if the town authorized the sale.