**UNITED STATES of America, Plaintiff,**

**and**

**Yonkers Branch–National Association FOR the Advancement of Colored People, et al., Plaintiffs–Intervenors,**

**v.**

**YONKERS BOARD OF EDUCATION; City of Yonkers; and Yonkers Community Development Agency, Defendants.**

**CITY OF YONKERS and Yonkers Community Development Agency, Third–Party Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and Secretary of Housing and Urban Development, Third–Party Defendants.**

**No. 80 Civ 6761 (LBS).**

United States District Court, S.D. New York.

Nov. 19, 1987.

U.S. Dept. of Justice, Housing and Civil Enforcement Section, Civil Rights Div., Washington, D.C., Brian Heffernan, Manuel Vargas, for plaintiff U.S. of America.

Michael H. Sussman, Yonkers, N.Y., for plaintiff-intervenor N.A.A.C.P.

Vedder, Price, Kaufman, Kammholz & Day, New York City, Michael W. Sculnick, for defendants City of Yonkers and Yonkers Community Development Agency.

Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., John B. Weaver, John H. Dudley, Mark Nelson, for defendant Yonkers Bd. of Educ.

United States Dept. of Justice, Civil Rights Div., Raymond LaRizza, and John W. Herold, Office of Litigation, U.S. Dept. of Housing & Urban Development, Washington, D.C., for third-party defendant Dept. of Housing & Urban Development.

## OPINION

SAND, District Judge.

On July 20, 1987, Plaintiff–Intervenors, the NAACP, moved this Court to enter an order requiring defendant Yonkers Board of Education ("YBE") to return to the City of Yonkers certain vacant portions of the land adjacent to School 30 and Lincoln High School so that such land might be utilized to effect compliance with this Court's Housing Remedy Order of May 28, 1986. The United States has joined in this motion. The YBE asks this Court to reconsider its prior Orders with respect to the Whitman School site and to permit it to occupy portions of the Whitman School building on an interim basis. The Court heard legal argument and held an evidentiary hearing on the issues raised by these applications on October 19, 20, and 23, 1987. Accompanied by counsel, the Court has visited the sites in question.

For the reasons set forth herein, we grant the motion of the Plaintiff–Intervenors and Plaintiffs with respect to the Lincoln and School 30 sites. We deny the Board's application with respect to Whitman.

*Justiciability, Forum and Scope of Judicial Review*

The tortuous process which has led to these applications has, we believe, been amply set forth in prior proceedings and the submissions of the parties and will be referred to herein only to the extent necessary for an understanding of the issues before the Court. The interrelationship between school and housing issues and the manner in which unused school property has heretofore been used to thwart integrative housing efforts has been detailed in this Court's liability Opinion. *See United States v. Yonkers,* 624 F.Supp. 1276 (S.D. N.Y.1985).

The Outside Housing Advisor has designated the three sites in question for use in fulfillment of the Housing Remedy Order requiring construction of 200 units of public housing. The City of Yonkers has asked the YBE to return the School 30 and Lincoln High School properties to the City for these purposes.

By resolution adopted July 15, 1987, the YBE refused to return any school property to the City. (On September 4, 1987, the YBE adopted a further resolution. This resolution authorized the conditional release of portions of the Lincoln and Whitman sites, but not of the School 30 site. This resolution was adopted in partial response to a request of the Court and as part of a compromise effort to make possible the adoption of an "alternate plan" for scattered site housing. In the light of this context of compromise, the Court does not view the September 4, 1987 resolution as in any way prejudicing the YBE's position in these proceedings.)

We deal at the outset with the circumstance that this application is made by the Plaintiff and Plaintiff–Intervenors and not by the City, although New York Education Law § 2556(9) calls for a return of land to the City. Section 2556(9) provides:

When the real property of a city under the control and management of the board of education is no longer needed for edu-

cational purposes in the city, such board shall notify the common council of such fact ... and such common council ... may then sell or dispose of such property in the manner in which other real property owned by the city may be sold or disposed of....

It will come as no surprise to anyone familiar with the history of this litigation that the City has acted in a negative or at best neutral fashion with respect to all efforts to implement the Court's Housing Remedy Order, and that any initiatives to further such implementation have come from the Plaintiffs, Plaintiff–Intervenors, or the Court itself. As the Court stated at the hearing, October 19, 1987, Tr. 7–16, this Court views this proceeding as one brought by movants on behalf of the City and will treat the issues of justiciability and scope of judicial review on that basis.

■ The YBE urges, as its first contention, that "THE REFUSAL BY THE BOARD OF EDUCATION TO DECLARE PORTIONS OF SCHOOL PROPERTY 'NO LONGER NEEDED FOR EDUCATIONAL PURPOSES' UNDER EDUCATION LAW § 2556(9) IS NOT SUBJECT TO JUDICIAL REVIEW IN ANY TRIBUNAL." Memorandum of Law of Yonkers Board of Education in Opposition to Motion of Yonkers Branch, NAACP, For Taking of School Properties (hereafter "YBE Memo") p. 1. This position, of course, is difficult to square with the language of § 2556(9) itself which provides that the Board of Education *"shall* notify" that the property is no longer needed and that the City (Common) Council *"may* then sell or dispose" of the property. (Emphasis added; *see* Tr. October 19, 1987 at p. 10). Indeed, the notion of a total absence of judicial review of an obligation imposed on a school board with respect to public property creates obvious problems. *See id.* at pp.12–16. *See also* YBE Memo, p.8 "non-reviewable by any court, absent a showing of fraud" and the references at pp. 11 and 13 to a "good faith" determination or decision of the School Board.

We do not believe, and no authority has been called to our attention in support of a contrary view, that a school board could in bad faith, or for reasons unrelated to education, withhold property subject to § 2556(9), or could attach unconstitutional or unlawful conditions to the notification required pursuant to that section and not be subject to judicial review in some forum. We therefore hold that a school board's refusal to notify the City pursuant to § 2556(9) in circumstances such as are present here presents a justiciable question.

The YBE next asserts that, if at all justiciable, the failure to notify pursuant to § 2556(9) is subject to judicial review only in a state court. This position misconceives the nature of these proceedings.

This Court has had frequent occasion to remind the litigants that the obligation to construct 200 units of public housing in East Yonkers originated in a commitment made by Yonkers in 1980 as a condition to receipt of the millions of dollars of federal Community Development and Block Grants ("CDBG"), funds Yonkers has since received. Thus, the Court has observed from time to time that, regardless of the ultimate outcome of this litigation, Yonkers must either construct the 200 units of public housing or return all of the CDBG funds it has received, currently estimated to be approximately $20 million dollars.

■ The YBE asserts that "[t]he specific remedy of locating sites for 200 housing units ... is essentially contractual in nature; and is not constitutionally based on a denial of equal protection. But for the fact that this specific remedy for this contractual breach has been incorporated as part of the housing remedy order issued by this Court on May 38 [sic], 1986, the issue is exclusively a state law question." YBE Memo, pp. i-ii.

First, it is difficult to perceive why the enforceability of a city's commitment to a federal housing agency as a precondition to receipt of federal funds pursuant to a federal grant program would present an issue of exclusively state law. This case does not fall within the narrow exception which enables rights under a federal grant program to be determined under state law

because the state law does not interfere with or is entirely compatible with federal interests. Second, and more importantly, the fact that Yonkers has an independent obligation to construct this housing in no way detracts from the fact that this obligation has been embodied in orders of a federal court to remedy federal constitutional and statutory violations.

The YBE's arguments that this Court should abstain to permit a state court to determine the School Board's obligations under § 2556(9), and its reliance on state court cases dealing with the formalities required to effect a transfer of property (*e.g., Harris v. Town of Wayland,* 392 Mass. 237, 466 N.E.2d 822 (1984)), ignore the essence of this entire proceeding. Having found that the federal constitutional and other rights of the Plaintiff–Intervenors class have been violated, a federal court is seeking to implement its remedy order. The notion that a federal court must await a state court determination in the context of this case totally misconceives the basis for "Pullman Abstention" (*Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)) and would effectively delay and frustrate implementation of federal civil rights remedies.

We thus conclude that the questions raised by the movants are justiciable and are reviewable by this Court.

■ Which brings us to the question of the appropriate scope of judicial review. We are firmly convinced that determinations made by the School Board with respect to education matters are entitled to great deference. A judgment made by a school board with respect to educational needs or practices should not be lightly set aside by a judiciary which lacks the professional expertise of those primarily entrusted with educational responsibilities. But it is entirely appropriate and indeed mandated by the prior history of the City–School–Board-housing relationship alluded to earlier, that this Court inquire whether the determinations not to release school property relate to bona fide educational needs or are motivated by non-educational reasons, es-pecially those designed either to block public housing (*e.g.,* the School 4 history, *see United States v. Yonkers,* 624 F.Supp. 1276, 1358–1363, 1518–1521 (S.D.N.Y.1985)) or to gain popular support for appearing to block public housing. *See also* this Court's prior findings with respect to Whitman.

With this background, we turn to the specific sites in question.

### Lincoln High School

■ The OHA has recommended that 48 units of town houses be built on this site, which abuts Midland Avenue. The site in question is totally vacant and, because of the nature of the terrain which contains a steep decline in grade, is quite distinct and functionally separate from the land immediately surrounding the Lincoln High School. The resistance of the YBE to parting with this land is said to arise from its desire to preserve the site as a land bank for possible future school use. Post–Hearing Brief of Yonkers Board of Education, p. 19. Thus, in 1973, the School Board successfully resisted a proposal that the land in question be sold to alleviate the City's fiscal crisis. However, in the intervening 14 years, no use has in fact been made of this land and the possible uses which might be made of the site by the School Board are highly conjectural. None of these proposed uses has advanced to any extent beyond vague speculation.

Thus, the question posed is whether the desire of the School Board to maintain ownership of a site physically separate and distinguishable from the balance of the property containing the school building and for which the School Board has no realistic present use, other than as a land bank, is real property "no longer needed for educational purposes" within the meaning of § 2556(9).

If and when, by virtue of increased school enrollments or other changed circumstances, the YBE shall have need for additional land, it shall be the obligation of the City of Yonkers to procure such land and make it available to the School Board. But under the circumstances which pres-

ently obtain, it is simply not permissible to "land bank" vacant land, publicly-owned and entirely suitable for housing in implementation of the Housing Remedy Order, because "some day" for "some purpose" it may have utility for school purposes. We conclude that the Lincoln site designated by the OHA is "no longer needed for educational purposes" and that there is no bona fide educational need for the YBE's retention of this site. We grant the motion insofar as the Lincoln School site is concerned and advise the OHA and the parties that for purposes of implementing the housing order, this land is hereby deemed to be city-owned land available for housing.

### Whitman

■ We have already determined that Whitman is similarly deemed to be city-owned land available for housing and have left to the Request for Proposal ("RFP") process the question of how much, if any, of the Whitman site and building may be utilized by the School Board, giving priority to the housing needs for that site. Nothing has been presented in this hearing which leads us to alter that view or ruling.

We decline the YBE's application to make interim use of Whitman beyond whatever use is presently being made by the YBE. Although at one time we believed that it might make economic sense to permit such use without prejudice to the ultimate determination of use of the site, it now appears that the cost of installation of telephone and other facilities necessary to render the facility usable by the Board would be so great that it would necessarily impact on the ultimate use question.

The YBE has urged that Whitman is now needed for centralized administrative purposes. We have no doubt that the YBE could make worthwhile use of some portions of the building. (The Court has directed that studies be made of the cost of severing the building so that the newest portion thereof, most suitable for administrative purposes, would be preserved while the older, less suitable portions, would be

demolished and the land used for housing. These studies are to continue). But we had already determined that Whitman was available for housing, reserving to the YBE only possible use of the site for library storage and teacher training, the only uses for the building proffered by the School Board at the time of the remedy hearings. We also found that the School Board's claim at that time for this need for Whitman was pretextual, to gain community support for the Board by action designed to block use of Whitman for housing.

In light of these past rulings, YBE's present desire for use of the building for centralized administrative purposes must be viewed as a new request for use of city-owned land in competition with the City's need for such land for housing purposes. Such administrative facilities can be located without many of the constraints which obtain in selecting suitable housing sites in the implementation of the Housing Remedy Order. In any event, as noted above, costly alterations would be required before the YBE could make full use of the building. (Gymnasium and cafeteria space are hardly needed or suitable for the YBE's contemplated uses.) We decline at this time to alter our previous rulings, modify the present RFP proposals or permit expanded interim use of Whitman by the YBE.

### School 30

■ The OHA has recommended construction of 18 units on this site adjacent to School 30. See Court Ex. I, October 20, 1987. The site is a wooded area so close to the Cross County Parkway that we have the paradox of the School Board arguing both that it is a nature enclave that should be preserved and that the traffic noise is too great for housing purposes.

We find that the proposed School 30 site is available to the City for housing purposes. Even without the 2.2 acres proposed for housing, the School 30 site would have enough remaining wooded area to meet the description of the school fur-

nished to parents of prospective students. Much of the testimony by former teachers as to the views of the woods from classroom windows related to woods south of the school building, which would not be disturbed by the projected housing. Nature walks and education could be conducted in these woods. Indeed, the use of the proposed site for these purposes by teachers formerly at School 30 is undocumented and occurred infrequently. Other more significant wooded areas open to the public and parks are available in the immediate vicinity.

*Conclusion*

These sites have been designated by the OHA taking into consideration costs, suitability for housing consistent with the purposes of the Housing Remedy Order, compliance with HUD requirements, immediate availability, etc. All necessary steps to implement the construction of housing on the School 4 site (not challenged in these proceedings, the land having already been returned by the YBE to the City), the Whitman, Lincoln High School and School 30 sites are to go forward as expeditiously as circumstances permit. As the Court indicated earlier, if at any time which will not delay the signing of contracts or construction, the City of Yonkers is ready, willing and able to proffer alternative sites meeting the foregoing requisites which are available to the City, the Court will of course entertain an application for the substitution of such sites.

SO ORDERED.