Salinger, Kenneth W., J.
Plaintiffs, who reside in Marlborough, Massachusetts, challenge plans by the City of Marlborough to construct a senior center inside Ward Park. Plaintiffs claim that the City took the land now known as Ward Park for the sole purpose of using it as a playground, that building a senior center inside the Park would be a change in use from a playground purpose to a new purpose, and that the City cannot convert the Park to such a new use unless it first: (a) receives notice from the Marlborough Parks and Recreation Commission that the land where the senior center will be located is no longer needed for playground purposes; (b) obtains a vote by the Massachusetts Legislature authorizing the City to use this part of Ward Park for a new, non-playground purpose; and (c) reviews the impacts of the senior center project under the Massachusetts Environmental Policy Act.
The Court concludes that Plaintiffs have standing to seeking relief in the nature of an order of mandamus that the City must comply with these alleged legal duties before constructing the proposed senior center.
The Court further concludes, however, that Plaintiffs’ claims are without merit as a matter of law. The City took the Ward Park land “for the purpose of a public play ground or recreation center” as defined in G.L.c. 45, §14. This means that, as a matter of law, the use of Ward Park is not limited to playground purposes. To the contrary, as provided in §14 the City may use the Ward Park land for a range of uses that includes constructing buildings for any public, recreational, social or educational purposes that the City Council deems proper. Since the proposed senior center would not be a change in use from the broad purposes for which the land was originally taken, the City may construct the senior center without having to get over any of the legal hurdles cited by Plaintiffs. The Court will thus allow the City’s motion for judg *126 ment on the pleadings and enter declaratory judgment in its favor.
1. Background
In deciding the City’s motion for judgment on the pleadings under Mass.R.Civ.P. 12(c), the Court has assumed that the facts alleged in Plaintiffs’ complaint and any reasonable inferences that may be drawn therefrom are true. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 625 n.7 (2008). “Rule 12(c) functions as a ‘motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted.’ ” Boston Water & Sewer Comm’n v. Commonwealth, 64 Mass.App.Ct. 611, 614 (2005), quoting Jarosz v. Palmer, 436 Mass. 526, 529 (2002). The following facts are alleged in or may be inferred from the complaint and the exhibits that are part of that pleading.
The City acquired Ward Park in 1923 by eminent domain. The order of taking stated that the City was taking this land pursuant to G.L.c. 45, §14, and that it was doing so “for the purpose of a public play ground or recreation center, as more particularly set forth in said Section 14 of Chapter 45 of the General Laws of Massachusetts.” Thus, the order of taking incorporated by reference the part of §14 stating that land taken by a city or town “for the purposes of a public playground or recreation center” may be used not only to “conduct and promote recreation, play, sport and physical education” but also to “construct buildings” that may be used “for such other public recreational, social or educational purposes” that the “officer or board in control of the land or building . . . may deem proper.” See G.L.c. 45, §14.
The City built Hayden Meadow Playground on this land in 1924. In June of that year the name of the playground was changed to Ward Park. In 1925 a plaque was placed on a gateway arch at Ward Park stating in part that the land was “Acquired by the City of Marlborough and dedicated to the better development of its youth.” Plaintiffs do not allege, however, that the City ever recorded any legal restriction on the use of the Ward Park land or took any other legal action to restrict use of the land to playground uses or other youth recreation.
Since 1924 Ward Park has been used for various youth and adult athletic and recreational purposes including baseball, softball, cricket, football, lacrosse, track, tennis, basketball, and other sports. Today Ward Park contains tennis courts, basketball courts, baseball diamonds that are also used as playing fields for other sports, a quarter-mile track, and a wading pool. It is also used for municipal gatherings and celebrations, including fireworks displays and carnivals. Ward Park is now managed by the Marlborough Parks and Recreation Commission, which is reasonable for managing playgrounds, parks, and recreation centers to promote and carry on recreational and parks activities. The new senior center would be managed by the Marlborough Council on Aging.
Although Ward Park was originally 20 acres in size, today only 7.6 acres remain in the park. The rest of the former park land was used for the purpose of constructing the Bigelow School and, in small part, for constructing part of Grainer Boulevard to divert U.S. Route 20 around the center of downtown Marlborough.
The proposed senior center and associated parking and grounds at issue in this case will occupy roughly 2.2 acres of the remaining 7.6 acres in Ward Park. The senior center building itself will have a footprint of 13,000 square feet, which is roughly three-tenths of an acre. The two-story building will have total useable floor space of roughly 22,000 square feet.
The City Council voted 10-1 on November 4, 2013, to approve the senior center construction at Ward Park. Construction began in December 2013.
2. Standing to Seek Mandamus Relief
Plaintiffs have standing to seek relief in the nature of mandamus under G.L.c. 249, §5. The so-called public right doctrine allows citizens who otherwise would lack standing because they themselves have not suffered any legal injury to “seek relief in the nature of mandamus to compel the performance of a duly required by law.” Perella v. Massachusetts Turnpike Auth., 55 Mass.App.Ct. 537, 539 (2002), quoting Tax Equity Alliance of Massachusetts v. Commissioner of Revenue, 423 Mass. 708, 714 (1996). This doctrine may only be invoked to compel “the enforcement of clear and unequivocal duties.” Perella at 540; accord, e.g., Anzalone v. Administrative Office of the Trial Court, 457 Mass. 647, 649, 654-55 (2010).
Plaintiffs may seek mandamus relief because they allege that the City and other Defendants have a clear and unequivocal duty to obtain certain permissions and approvals and to conduct certain environmental and related reviews before constructing the proposed senior center. Cf. Moran v. Secretary of the Commonwealth, 347 Mass. 500, 504-05 (1965) (citizens had standing to seek mandamus to enforce Secretary’s public duty to act in accordance with county’s report describing legislative districts); Quinn v. School Comm. of Plymouth, 332 Mass. 410, 413 (1955) (residents could seek mandamus to compel school officials to comply with public duty to furnish transportation to students attending private schools); Cape Cod S.S. Co. v. Selectmen of Provincetown, 295 Mass. 65, 69 (1936) (local citizens and taxpayers could petition for mandamus to force town to comply with public duty to allow town wharf to be used as public landing). This is not a case in which local citizens seek merely to invalidate an existing contract, without seeking to enforce public duties allegedly owed by government officials to the citizens they represent. Cf. Statewide Towing Assoc., Inc., v. City of Lowell, 68 Mass.App.Ct. 791, 795 (2007) *127 (plaintiff had no standing under public right doctrine to challenge legality of municipal towing contract).
The City’s argument that Plaintiffs lack standing because they cannot prevail on the merits wrongly conflates separate and distinct issues. ‘The threshold question whether [a plaintiff] has standing is different than the ultimate merit of [the plaintiffs] allegations.” Hoffman v. Bd. of Zoning Appeal of Cambridge, 74 Mass.App.Ct. 804, 809, rev. denied, 455 Mass. 1104 (2009). “A review of standing. .. does not require that the factfinder ultimately find a plaintiffs allegations meritorious. To do so would be to deny standing, after the fact, to any unsuccessful plaintiff,” which would be incorrect. Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996). Thus Plaintiffs do not have to “prevail on the merits to secure standing.” See Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass.App.Ct. 515, 518, rev. denied, 460 Mass. 1108 (2011); accord Butler v. City of Waltham, 63 Mass.App.Ct. 435, 441 (2005) (“Standing is the gateway through which one must pass en route to an inquiry on the merits”).
3. Merits
a. G.L.c. 40, §15A
Plaintiffs assert in Count I of their complaint that Ward Park was acquired and is being held solely for playground purposes and that therefore no portion of Ward Park may be used to build and operate a senior center unless the Parks and Recreation Commission first gives notice that the land is no longer needed for playground purposes and at least two-thirds of the City Council thereafter votes to allow the land to be used for another purpose, as required by G.L.c. 40, §15A.
The premise of this claim is incorrect because, as a matter of law, the use of Ward Park has never been restricted to playground purposes.[3] The City took and is holding Ward Park for a broad range of purposes that encompasses the construction and operation of a senior center. As noted above, the City acquired Ward Park in 1923 “for the purpose of a public play ground or recreation center, as more particularly set forth in said Section 14 of Chapter 45 of the General Laws of Massachusetts.” Thus, the order of taking specified that the Ciiy was taking the land so that it could be used for any of the purposes specified in G.L.c. 45, §14. The Legislature made clear in §14 that those purposes including not only “recreation, play, sport and physical education” in an outdoor setting on a “playground,” but also encompass “construct[ing] buildings” that may be used “for such other public recreational, social or educational purposes” that the “officer or board in control of the land or building . . . may deem proper.” See G.L.c. 45, §14. The Court concludes that, as a matter of law, the City Council may determine that use of a portion of Ward Park for a senior center that will offer recreational, social, and educational opportunities to older residents of Marlborough is a proper use of this land that falls within the Legislature’s definition of “recreation center” in §14.
Plaintiffs make no claim that the City took any action after 1923 to restrict use of the Ward Park land to playground purposes. It is true that the purposes for which municipal land are being held must be determined not only by reviewing for the purposes for which the land was originally taken, but also by considering whether the land has subsequently been dedicated to more limited purposes. Cf. Mahajan v. Department of Environmental Protection, 464 Mass. 604, 615-20 (2013) (applying art. 97 of the Amendments to the Massachusetts Constitution). For example, if the use of public land has been restricted “by deed or other recorded restriction,” or if an order taking land for public purposes is accompanied by a plan limiting the use of that land, then it can fairly be said that the land was taken or subsequently designated for limited public purposes. Id. But Plaintiffs do not allege that any similar restriction was imposed on the use of Ward Park. The mere fact that a plaque at Ward Park states that this land is “dedicated to the better development of [the City’s] youth” has no bearing on whether use of the land has been legally restricted to playground purposes. See Mahajan, 464 Mass. at 615-19 & n.15 (holding that Long Wharf in Boston had not been restricted to use as a park, despite fact that bronze plaque designated area as “Long Wharf Park”).
Section 15A is therefore not implicated here. By its terms, G.L.c. 40, §15A, only applies where municipal land is being held for a “specific purpose” and the city or town now wants to use the land for a different purpose. Since the City took and is holding the Ward Park land for a broad range of purposes, the City may use the properly for any of those purposes, including for a new senior center, “without complying with the transfer provisions of G.L.c. 40, §15A.” LeClair v. Town of Norwell, 430 Mass. 328, 339 n.13 (1999).
The fact that in the past 90 years Ward Park has not been used for a senior center, gymnasium, or other substantial building that functions as a recreation center “does not affect the result. It is not unreasonable for [a municipality] to refrain from developing property unless and until there is a need to do so. To require [municipal] boards in control of land to do otherwise would encourage unnecessary or premature development.” Harris v. Town of Wayland, 392 Mass. 237, 242 (1984) (applying §15A). It may be that, “[u]nder certain circumstances not present here, the ultimate use to which the land is put may provide the best evidence of the purposes of the taking, notwithstanding the language of the original order of taking or accompanying urban renewal plan.” Mahajan, 464 Mass. at 620 (dictum). But where, as here, the original order of taking is unambiguous, the municipality never took formal steps thereafter to restrict the pur *128 poses for which the land could be used, and the land was never used in a manner inconsistent with the purposes for which the land was taken, then the municipality may decide to use the land for any of the purposes for which it was originally taken without having to comply with G.L.c. 40; §15A. See Board of Selectmen of Hanson v. Lindsay, 444 Mass. 502, 509 (2009) (where town took property through a tax taking, thereafter a 1971 town meeting authorized board of selectmen to accept a deed conveying same properly to town for “conservation purposes," but no such deed was accepted, property “was not held for a specific purpose” and thus “compliance with . . . G.L.c. 40, §15A, was not required” even though town had never developed land); LeClair, 430 Mass. at 339 n.13 (unambiguous warrant article that authorized purchase of land “for any municipal purposes or any other purposes the town sees fit” cannot be construed as limiting use of land to specific purpose, regardless of “history behind its passage”); cf. Harris, 392 Mass. at 238-42 (where 1956 town meeting authorized board of selectmen to acquire property “for school purposes,” fact that property had not been developed for several decades did change fact that it was acquired for specific purpose).
b. Article 97
Plaintiffs’ claim under art. 97 of the Amendments to the Massachusetts Constitution, asserted in Count II, fails for much the same reason. Article 97 provides in part that land that has been “taken or acquired” by the Commonwealth or its political subdivisions for the purposes of “conservation, development and utilization of the agricultural, mineral, forest, water, air and other natural resources” in Massachusetts “shall not be used for other purposes or otherwise disposed of’ without the approval of the Legislature by two-thirds votes of both the House and the Senate.
In determining whether particular public lands are subject to art. 97, it is irrelevant “whether the use of the land incidentally serves purposes consistent with art. 97, or whether the land displays some attributes of art. 97 land.” Mahajan, 464 Mass. at 615. Instead, a court must determine “whether the land was taken for those purposes, or subsequent to the taking was designated for these purposes in a manner sufficient to invoke the protection of art. 97" (emphasis in original). Id. ”As the plain language of art. 97 indicates, for land to be subject to the two-thirds vote requirement on disposition or use for other purposes, it must be ‘taken or acquiredfor [the] purpose’ of protecting interests covered by art. 97" (emphasis in original). Id. at 616. “Because the spirit of art. 97 is derived from the related doctrine of ‘prior public use,’ cases applying that doctrine inform our analysis.” Id. Like the prior public use doctrine, art. 97 “is only applicable ‘to those lands which are in fact ”devoted to one public use." ’ “ Id. at 617 (emphasis in original), quoting Muir v. City of Leominster, 2 Mass.App.Ct. 587, 591 (1974), quoting in turn Robbins v. Department of Pub. Works, 355 Mass. 328, 330 (1969).
The Court assumes without deciding that land dedicated solely to playground uses are covered by art. 97, and that constructing a senior center on land so dedicated would require two-thirds votes of both Legislative branches. The City argues that only unimproved parks and other unimproved conservation lands fall within the scope of art. 97, and that playgrounds containing improvements such as paved courts or pathways, fixed equipment, playing fields, or small buildings do not. The Cily’s argument seems inconsistent with the plain language of art. 97, which protects not only the “conservation” of natural resources in an unimproved, natural state, but also the “development and utilization” of natural resources so that they may be enjoyed in other ways. By its plain terms art. 97 protects not only undeveloped state forests, unimproved parks, and pristine conservation lands in rural or suburban parts of Massachusetts, but also public open space that has been developed so that residents of urban areas may also use and enjoy the Commonwealth’s natural resources.[4] Under the City’s constricted view of art. 97, public lands acquired for the purpose of constructing improvements to build an urban park — like the Boston Public Garden with its walking paths, artificial pond, bridge, benches, and statues, or the Esplanade on the Boston side of the Charles River with its Hatch Shell for outdoor concerts and paved walking path leading visitors past a larger-than-life bust of former Boston Pops conductor Arthur Fiedler — would not be protected under art. 97. That is a surprising interpretation that seems to be inconsistent with the constitutional text. In 1997 the Attorney General concluded “that City Hall Plaza in Boston was subject to art. 97" because the Government Center urban renewal plan provides that this paved plaza ’’shall be devoted to public open space." Mahajan, 464 Mass. at 619 n.19. If that is correct, it is hard to imagine that land dedicated to the kind of playground and athletic uses found in Ward Park would not be subject to art. 97. But the Court need not decide this issue in order to resolve this case.
The Ward Park land is not subject to art. 97 because it was not taken for or otherwise designated for one public use that is within the scope of art. 97. The City took this land for a mix of uses, some of them within the scope of art. 97 and some not. The Court assumes that purely playground uses are within the purposes protected by art. 97 but agrees with Plaintiffs that construction of a 22,000 square foot building for use as a senior center or other kind of recreation center within the meaning of G.L.c. 45, §14, is not. Since Ward Park was taken for this entire range of public purposes, and was not devoted solely to playground uses, it is not subject to art. 97 as a matter of law. See Mahajan, 464 Mass. at 617-19 (since Lewis Wharf in Boston was taken for a range of urban renewal pur *129 poses, only some of which “are consistent with art. 97 purposes,” the property was not subject to art. 97).
c.Prior Public Use Doctrine
Plaintiffs allege in Count III that the City has violated the “prior public use” doctrine by commencing construction of the senior center without legislative approval. ‘The doctrine is well established that ‘[l]and appropriated to one public use cannot be diverted to another inconsistent public use without plain and explicit legislation to that end.’ ” Sacco v. Department of Public Works, 352 Mass. 670, 672 (1967), quoting Higginson v. Treasurer & School House Commrs. of Boston, 212 Mass. 583, 591 (1912). “Examples of such appropriations include ‘prior legislative authorization of a taking for a particular public purpose,’ acceptance of a ‘public or private grant restricted to a particular public purpose,’ a ‘formal dedication’ by a city or town of land for a particular public purpose, and the Legislature’s identifying a type of area (such as a great pond) with, or restricting it to, a particular use.” Newburyport Redevelopment Auth. v. Commonwealth, 9 Mass.App.Ct. 206, 239-40 (1980), quoting Muir, 2 Mass.App.Ct. at 591-92 & n. 1.
This claim fails as a matter of law for the same reason as the prior two claims. The Ward Park land was not acquired for or otherwise devoted to a single public use. Instead it was acquired for all playground and recreation center uses described in G.L.c. 45, §14. Since this land has been held for a wide range of possible uses, and is not “devoted to one public use,” it is not subject to the prior public use doctrine. See Muir, 2 Mass.App.Ct. at 591-92.
d.MEPA Review
Plaintiffs claim in Count IV that the City is violating a regulation that requires review under the Massachusetts Environmental Policy Act whenever “land held for natural resources purposes” within the meaning of art. 97 is to be used for a new purpose outside the scope of art. 97. See 301 C.M.R. §11.03(l)(b)(3). As explained above, the proposed senior center does not implicate art. 97. It follows that no MEPA review is required under the regulation relied upon by the Plaintiffs.
e.Relief Under G.L.c. 45, §18
Although the complaint does not contain any enumerated claim under G.L.c. 45, §18, one of Plaintiffs’ prayers for relief asks the Court to declare that operating a senior center at Ward Park would violate §18 because it “would be designated to serve a special age group.”
The Court must dismiss this claim because Plaintiffs lack of standing to seek such declaratory relief. Although Plaintiffs may seek mandamus relief under the public right doctrine, as discussed above, that does not entitle them to seek declaratory relief as to whether particular governmental action is lawful. Statewide Towing, 68 Mass.App.Ct. at 795; accord Town of Brookline v. Governor, 407 Mass. 377, 389 (1990) (Liacos, C.J., concurring). Plaintiffs lack standing to seek declaratory relief because they have neither alleged nor demonstrated that use of part of Ward Park for a senior center would adversely impact any legal rights of the Plaintiffs. “[0]nly persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of [another] branch of the government.” Tax Equity Alliance, 423 Mass, at 715 (taxpayers lacked standing to challenge constitutionality of capital gains tax law), quoting Doe v. The Governor, 381 Mass. 702, 704 (1980), and Kaplan v. Bowker, 333 Mass. 455, 459 (1956). “[S]tanding is not measured by the intensity of the litigant’s interest or the fervor of his advocacy.” Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135 (2000), quoting Valley Forge College v. Americans United for Separation of Church & State, 454 U.S. 464, 486 (1982). The declaratory judgment act, G.L.c. 231 A, did not create a “roving entitlement for allegedly aggrieved plaintiffs to seek judicial review of action by a public official or an agency that potentially impairs any asserted rights or privileges of the plaintiffs.” Enos, 432 Mass. at 141.
But this claim would fail as a matter of law even if Plaintiffs did have standing to assert a claim under G.L.c. 45, §18. This statute specifies that nothing in c. 45 should be construed “to prohibit the use of any playgrounds or recreation centers by adults or children of special age groups at the discretion of the body having the grounds or premises in charge.” Thus, §18 makes clear that a municipality may opt to limit use of part or all of a playground or recreation center (as broadly defined in G.L.c. 45, §14) to a particular age group. If Plaintiffs had standing to assert this claim then Defendants would be entitled to a judgment declaring that operating a senior center at Ward Park would notviolate G.L.c. 45, §18.
ORDER
Defendant’s motion for judgment on the pleadings is ALLOWED. Plaintiffs cross motion for judgment on the pleadings is DENIED. Final judgment shall enter dismissing all claims with prejudice.

The Court agrees with Plaintiffs that the 10-1 vote by the City Council to approve use of this land for a senior center did not moot this claim. Although the City Council approved this use of the land by a vote of more than two-thirds of its members, Plaintiffs claim that under G.L.c. 40, §15A, this vote was ineffective because the Parks and Recreation Commission never determined that the site is no longer needed for playground purposes. This claim would become moot if the Commission were to make such a finding and convey it to the City Council. If Ward Park had been acquired solely for playground purposes and as a result §15A applied, as Plaintiffs assert, there still would have been no need for the City *130 Council to delay its vote until after the Commission determined that the land was no longer needed for its original purposes. See Harris, 392 Mass. at 244 n. 11; Bouchard v. City of Haverhill, 342 Mass. 1, 4 (1961). Thus a subsequent vote by the Commission that the land is no longer needed for playground purposes “would cure any failure to comply with” §15A. Omartian v. Mayor of Springfield, 354 Mass. 439, 444 (1968).

The Court respectfully disagrees with the contrary reasoning in Curley v. Town of Billerica, Massachusetts Land Court No. 12 Misc. 459001 RBF, 2013 WL 4029208, 2013 Mass. LCR LEXIS 128 (2013), upon which the City relies.