ELBE FILE AND BINDER CO. INC. *vs.* CITY OF
FALL RIVER.

Bristol. October 27, 1952. — January 28, 1953.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Municipal Corporations*, Lease of municipal property, Contracts, Officers and agents. *Fall River. Contract*, Validity, With municipality.

In a lease of real estate executed in behalf of a city as lessor by its mayor, covenants requiring the city to do certain rehabilitation and remodeling work on the property so extensive in character that the cost thereof would exceed the total rent, which also was in reality the purchase price to be paid for the property under an option given by the lease to the lessee to purchase at the end of the term for a nominal amount, were not binding on the city because they were beyond the scope of an order of the city council authorizing the mayor to give a lease of the property to the lessee but merely specifying the term, the rent and the purchase option without mention of such work. [684–685]

The fact that a lease of real estate given by the city of Fall River as lessor was signed by two members of the board of finance established by St. 1931, c. 44, did not make binding on the city covenants in the lease, otherwise unauthorized, requiring the city to do certain work on the leased premises. [685–686]

Even if a city derived benefit from a lease of real estate given by it as lessor, it was not liable to the lessee for failure to perform unauthorized covenants in the lease requiring it to do certain work on the leased premises. [686]

CONTRACT. Writ in the Superior Court dated January 14, 1943.

The action was heard by *Rome*, J., upon the report of an auditor.

*Isador S. Levin,* (*Benjamin Horvitz* with him,) for the plaintiff.

*John T. Farrell,* for the defendant.

QUA, C.J. In this action the plaintiff seeks to recover for failure of the defendant to perform its covenants to make certain repairs and improvements in a building of the "Cornell Mills," the second and third floors of which, with appurtenances, were purportedly leased by the defendant to the plaintiff by an indenture of lease, dated October 20, 1939, and containing also a covenant to convey the entire property to the plaintiff at the end of the term. The case was heard by an auditor whose findings of fact were to be final. Upon the coming in of the auditor's final report the judge denied a motion of the defendant for recommittal and a motion of the plaintiff for judgment in its favor on the report and allowed the defendant's motion for judgment in its favor on the report. Both parties excepted.

The indenture was executed by the defendant by its mayor and was "approved" by its "corporation counsel" and by two members of the board of finance. See St. 1931, c. 44, § 6. The lease was to run for five years from April 1, 1940, at a rental of $4,000 a year. The purchase price at the end of the term was to be $1. There were conditions that the plaintiff should maintain a payroll of not less than $600,000 during the term and other provisions not material to the present case. The defendant's covenants to make repairs and improvements, which lie at the foundation of the plaintiff's claims, will be described presently. The plaintiff entered into possession, occupied the premises, paid the rent, and ultimately purchased the property according to the terms of the indenture.

The defendant does not contend that it made all the repairs and improvements called for by the indenture. It contends that it was beyond the power of the defendant to enter into an indenture of this kind; that in any event the mayor had no authority to execute such an indenture in the defendant's behalf; and that the defendant is not bound by it.

The defendant's title to the property had been acquired through foreclosure of a tax lien. The property could therefore be "disposed of like any land belonging to . . . [the defendant] and held for municipal purposes . . . ." G. L. (Ter. Ed.) c. 60, § 77. The body having general power to authorize the lease and sale of lands was the city council. G. L. (Ter. Ed.) c. 39, § 1, c. 40, § 3, c. 43, §§ 3, 50, 59, 66, 81 (see now as appearing in St. 1948, c. 459, § 8), 95 (inserted by St. 1938, c. 378, § 15). See *Lawrence v. Stratton*, 312 Mass. 517, 520. The city council did by a simple order approved on October 18, 1939, authorize the mayor to lease and convey the property to the plaintiff. The order in its entirety read as follows: "Ordered, That the mayor be, and he is hereby, authorized to execute and deliver a lease to the Elbe File and Binder Company, Incorporated, for a period of five years at an annual rental of $4,000 payable monthly in advance for the second and third floors of the Cornell Mills so called, together with a portion of the basement not heretofore set aside or leased, and with the privilege to the lessee to purchase the said Cornell Mills at the termination of said lease for $1.00 and other valuable considerations."

It will be noted that this order says nothing about repairs and improvements. The indenture as executed by the mayor followed the provisions of the order as to term, rental, and, we will assume, description of the property and final purchase price. But the indenture also included covenants by the defendant to make no fewer than seventeen different repairs and improvements, some of them subdivided into two or more items. They included such matters as "to provide toilet and washing facilities for between one hundred twenty-five and one hundred and fifty employees on each of the second and third floors," to furnish blower system heat and live steam for manufacturing during the term, to provide an outside door and loading platform with roof for at least two trucks, to treat approximately 2,500 square feet with fire proof material for a lacquer and spraying room, to bring in a reasonable number of main trunk

and auxiliary power lines and all necessary wiring to points designated by the plaintiff, to provide a chute for cartons between the second and third floors, to remove inside walls, partitions, and other obstructions as designated by the plaintiff, and to construct a road to number 2 storehouse. There were also items for general repairs and painting of the leased premises. It is hardly too much to say that the indenture called for a general rehabilitation of the premises, together with a considerable amount of remodeling to suit the convenience of the plaintiff. The extensive character of this work and the expense to the defendant involved in it can be seen from findings of the auditor that it actually cost at least $21,644.33[1] to perform work which the defendant was obligated to perform and failed to perform. In other words the lease purported to bind the defendant to obligations in excess of the total rent reserved for the five year term, which of course was in reality the purchase price for the property. Under the indenture the city would in fact receive nothing for the property because of provisions in the indenture of which no mention whatever was made in the order supposedly authorizing its execution. Even if the order might be construed as authorizing some minor expenses, such as those referred to in *Davis* v. *Rockport,* 213 Mass. 279, 283, as incidental to the lease and sale, which we do not decide, the obligations which the defendant purported to assume under the indenture were not of that character and were altogether too substantial and too destructive of the terms of the order itself to be permitted to stand. *Palmer* v. *Haverhill,* 98 Mass. 487. *Tainter* v. *Worcester,* 123 Mass. 311, 317.

We cannot accept the plaintiff's argument that the indenture was valid because it bore the signatures of two members of the finance board that was set up in Fall River by St. 1931, c. 44. That statute gave the board what might be described as a veto power over appropriations and the

---

[1] Actually the auditor's figures were higher, but we have excluded some items as to which there might be doubt of the defendant's responsibility under the terms of the indenture, even if it was valid.

incurring of debts by the city (§ 8), but it did not grant to the board any general power to incur obligations binding upon the city, except with respect to the issue of certain bonds (§ 2) and for the board's own expenses. § 7. *Dunne* v. *Fall River*, 328 Mass. 332.

It is well settled that one dealing with officers of a municipality must at his peril ascertain their powers, and that the municipality is, in general, not bound by estoppel to unauthorized liabilities. *Wormstead* v. *Lynn*, 184 Mass. 425, 428. *Meader* v. *West Newbury*, 256 Mass. 37, 39. *Adalian Brothers, Inc.* v. *Boston*, 323 Mass. 629. *Ryan* v. *Somerville*, 328 Mass. 324. *Dunne* v. *Fall River*, 328 Mass. 332, 335. This rule is applicable here even though the defendant may have received some indirect benefit from a new industry with a substantial payroll.

The inescapable result is that the defendant is not bound by the covenants of the indenture, and that the judge rightly ordered judgment for the defendant for the reason that the indenture was not in accordance with the authority given by the order of the city council. Whether the indenture was not binding for other reasons need not be considered.

The defendant's exceptions were to be waived if the plaintiff's exceptions were overruled.

*Plaintiff's exceptions overruled.*
*Defendant's exceptions dismissed.*