CRANBERRY GROWERS SERVICE, INC. *vs.* TOWN OF
DUXBURY.

Plymouth. April 6, 1993. - May 27, 1993.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Municipal Corporations*, Conservation commission, Lease of property.
*Estoppel.*

In the absence of a town meeting vote authorizing the transaction, the
conservation commission of a town had no authority to lease premises
under its charge, even if the lease restricted use of the premises to con-
servation purposes. [355-356]

Estoppel principles were not applicable to preclude a town from asserting
the unlawfulness of a purported lease of municipal land executed by its
conservation commission without the authority of a town meeting vote.
[356]

This court declined to consider what, if any, bearing art. 97 of the Amend-
ments to the Massachusetts Constitution might have with regard to a
lease of land held in the management and control of a municipal con-
servation commission. [356-357]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 20, 1990.

The case was heard by *John M. Xifaras*, J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Gary A. Nickerson* for the plaintiff.

*Robert S. Troy*, Town Counsel, for the defendant.

WILKINS, J. We hold that a town conservation commission
may not lease property held in its care, custody, manage-
ment, and control without a town meeting vote authorizing
the lease.

The plaintiff brought this action in November, 1990, seek-
ing a determination that it had a valid lease from the Dux-

bury conservation commission granting it the right until 2000 to farm cranberry bogs (premises) that the inhabitants of Duxbury had purchased for conservation purposes pursuant to town meeting authorization. The inhabitants of the town acquired the larger portion of the premises for conservation purposes by a 1971 deed that conveyed the property "for the uses and purposes of [Duxbury's] Conservation Commission." The balance of the premises was conveyed to the inhabitants of the town "through its *CONSERVATION COMMISSION*, and to be used for CONSERVATION PURPOSES" (emphasis in original). We have no doubt that the combination of the town meeting vote and the deeds of the premises placed the property under the care, custody, management, and control of the conservation commission. See *Harris* v. *Wayland*, 392 Mass. 237, 240-241 (1984).

In 1980, the conservation commission, without any authorizing vote of the town, purported to lease the premises to the plaintiff for ten years with the right in the plaintiff to extend the lease for an additional ten years. The town raised the question of the validity of the lease after the plaintiff had notified the conservation commission in November, 1989, of its determination to extend the lease until 2000. The town declined to agree to the extension. On cross-motions for summary judgment, a Superior Court judge ruled in favor of the town. We transferred the plaintiff's appeal to this court on our own motion. We affirm.

In the absence of town meeting vote authorizing the transaction, a town conservation commission has no authority to lease premises under its charge, even if the lease restricts use of the premises to conservation purposes. The statute authorizing the formation of conservation commissions and defining their powers and duties neither explicitly nor implicitly authorizes a conservation commission, on its own, to lease land held for conservation purposes. G. L. c. 40, § 8C (1990 ed.). A town may lease real estate held for public use by action of a committee (or agent) that is duly authorized to do so. See *Ballantine* v. *Falmouth*, 363 Mass. 760, 766 (1973); G. L. c. 40, §§ 3, 4 (1990 ed.). That due authorization, absent any

other relevant statute, must come from the town's legislative body. It is the town acting through its town meeting (or other legislative body) that "may make such orders as it may deem necessary or expedient for the disposal or use of its corporate property." G. L. c. 40, § 3. In exercising its corporate powers through contracts, the town meeting (or other legislative body) must authorize the terms and conditions of such contracts. G. L. c. 40, § 4. The lease was not authorized by town meeting vote and is invalid. See *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 156 (1983); *Salem Sound Dev. Corp.* v. *Salem*, 26 Mass. App. Ct. 396, 399 (1988).

Although the plaintiff made certain improvements to the land that would not come to fruition until after the first ten-year term of the purported lease, there is no basis for estopping the town from asserting the unlawfulness of the lease. See *Elbe File & Binder Co.* v. *Fall River*, 329 Mass. 682, 686 (1953). The requirements of laws protecting the public interest in public property must be followed. See *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Auth.*, 387 Mass. 687, 693-694 (1982); *Doris* v. *Police Comm'r of Boston*, 374 Mass. 443, 449 (1978). It is hardly inappropriate to require that one who seeks to acquire an interest in municipal land determine that the person or board purporting to grant that interest is properly authorized to do so. See *Elbe File & Binder Co.* v. *Fall River, supra.*[1]

Acting on his own motion, as far as we can discern, the motion judge indicated additionally that the town had no authority to lease the premises because, under art. 97 of the Articles of Amendment to the Constitution of the Commonwealth, in the judge's view, no land acquired for conservation purposes may be leased, even for conservation purposes, without the authorization of laws enacted by a two-thirds

---

[1]The plaintiff is not aided by G. L. c. 40, § 3A (1990 ed.), making certain instruments purporting to affect an interest in real estate binding on a town. Such an instrument must be executed by an "agent or committee authorized by particular vote of the . . . town." There is, as we have said, no such vote.

vote of each branch of the Legislature. Article 97 states that land to which it applies shall not be "disposed of" except by specially enacted laws. We do not favor answering a constitutional question that is not necessary to the result we reach. We, therefore, do not decide what, if any, bearing art. 97 may have when a conservation commission, authorized by a vote of its municipal legislative body, purports to lease land, held by it, for use for conservation purposes.[2]

*Judgment affirmed.*

---

[2]There are opinions of Attorneys General that state that a lease is a disposition for art. 97 purposes. See Rep. A.G., Pub. Doc. No. 12, at 143, 146 (1981); Rep. A.G., Pub. Doc. No. 12, at 129, 132-133 (1980); Rep. A.G., Pub. Doc. No. 12, at 139, 143-144 (1973). The Appeals Court has held that a grant of a one-year seasonal permit, revocable at will, for conducting a program under the supervision of the Department of Environmental Management was not a disposition of land subject to art. 97. See *Miller* v. *Commissioner of the Dep't of Envtl. Management*, 23 Mass. App. Ct. 968, 970 (1987). We have said that the authority of a town to make orders for the *disposal* or use of its corporate property implicitly authorized a town to enter into a lesser arrangement, namely, the lease of its land for appropriate uses. See *Ballantine* v. *Falmouth*, 363 Mass. 760, 767 (1973). We did not say, however, that in leasing town property, the town disposed of the property.