SlKORA, J.
Procedural History
Pursuant to G.L.c. 30A, §14, the plaintiff Thomas D. Moynahan appeals from a final decision of the defendants Essex County Retirement Board (“ECRB”) and Massachusetts Contributory Retirement Appeal Board (“CRAB”) denying him creditable service and a corresponding retirement allowance for six years of employment (1984 to 1990) as a full-time custodian at the Hamilton-Wareham Regional High School.
Upon his retirement on or about October 1990, Mr. Moynahan sought a retirement allowance crediting those six years. The ECRB sought and received an opinion from the Massachusetts Public Employees Retirement Administration (“PERA”) to the effect that the governing statutes precluded creditable service for those years. The ECRB adopted the opinion and denied the service and conforming allowance. Pursuant to G.L.c. 32, §16(4), Moynahan appealed that determination to CRAB. An administrative magistrate of the Division of Administrative Law Appeals affirmed the denial of the requested retirement allowance (Record Appendix or “RA" at *233 42-47). CRAB thus adopted the magistrate’s decision as the final administrative adjudication of the request (RA5-7).
Mr. Moynahan appeals to the Superior Court upon the ground that the administrative decision rests upon an error of law (or possibly arbitrary or inequitable action), within the meaning of G.L.c. 30A, §14(7) [Superior Court Complaint, final two paragraphs).
Factual Background
Mr. Moynahan began employment in February 1955 as a call (part-time) firefighter for the Town of Ipswich. At that time he became a member of the Essex Couniy Retirement System. He ceased work as a call firefighter in December of 1980. Effectively as of March 23, 1983, he received superannuation retirement with an award of 25 years and 10 months of creditable service.
During 1983 and 1984 he received his retirement benefit payments. They totaled $893.38. During 1984 he considered employment as a full-time custodian at Hamilton-Wenham Regional High School and a resumption of membership in the Essex County Retirement System. He corresponded with the ECRB upon the subject. On October 9, 1984, the executive secretary of that board wrote him that he could “be reinstated into the retirement system as an active member” if he returned to the system the $893.38 of benefits received to that point; and stated her belief that “the future benefits to be gained by you by re-establishing membership in a full-time position are well worth making this payment.” (RA 38.)
In response Moynahan returned the retirement payments and proceeded with employment as a full-time custodian. In October of 1990, he retired from that position. During the period of August 1984 to October 1990 he had contributed a retirement deduction at the established rate of 5 percent. In 1990, he sought a superannuation retirement allowance based upon both his employment as a call firefighter from 1955 to 1980 and his employment as a full-time custodian from 1984 to 1990.
The ECRB then sought PERA’s guidance upon the proper calculation of creditable service and resulting benefit level. PERA opined that the controlling provisions of G.L.c. 32, §§3(8)(b) and 5(l)(g) did not authorize reinstatement of active membership in the retirement system once an employee had earlier retired and had effectively received any retirement allowance.
The ECRB followed the opinion. In February of 1991, it refunded to Moynihan all retirement deductions taken over the six years from his custodian’s salary ($5,743.69); and restored his 1983 superannuation retirement allowance as determined by his creditable years of service as a call firefighter.
Mr. Moynahan then commenced the administrative process resulting in the present appeal. He asserts that he reasonably relied upon the incorrect representation of the ECRB in 1984 that he could achieve reinstatement and an increased retirement payment by means of his employment as a full-time custodian; and that he had passed up preferable alternative employment as a result.
Discussion
On appeal Mr. Moynahan does not challenge the application of the pertinent statutes (Superior Court “appeal” complaint paragraphs 9-12; and final paragraph). Consequently, I take G.L.c. 32, §3(8)(b) [the general limitation upon reinstatement of former members] and §5(l)(g) [the specific enumerated exceptions to the general limitation] normally to exclude the reinstatement sought by Mr. Moynahan.
Instead he grounds the appeal upon a specific point of law or equity: the rule of promissory estoppel. He contends that the ECRB in 1984 induced him to take the position of full-time custodian by its inaccurate representation of an increased retirement allowance. That board did mistakenly lead him to believe that his time as a custodian would be creditable cumulatively with his time as a call firefighter toward a higher retirement benefit (RA 34-35; 38). Consequently Mr. Moynahan proposes that, under the rule of promissory estoppel (or, by inference, equitable estoppel) the ECRB should be bound to fulfill its promise to him of the higher retirement benefit because he reasonably relied upon its negligent misrepresentation by acceptance and performance of the custodian position. He relies upon a major Massachusetts precedent for operation of promissory estoppel between private parties: Loranger Construction Corporation v. E.F.Hauserman Co., 376 Mass. 757, 760-61 (1978) [Superior Court Memorandum on Support of Appeal at 2],
The defendant ECRB (and impliedly CRAB) responds upon two grounds: (1) that as a matter of procedure, Moynahan’s failure to file a motion for judgment on the pleadings in this c. 30A appeal within the time limit set by Superior Court Standing Order No. 1-96, paragraph 4 (within 30 days of the service of the administrative record) requires dismissal; and that, as a matter of substance, the notion of promissory or equitable estoppel does not apply to governmental parties.
1. I do not construe Standing Order 1-96 to require the sanction of dismissal for violation of its timetable. Its deadlines are procedural; they are directory, not mandatory. They promote the orderly and timely accomplishment of litigation. Noncompliance will not ordinarily forfeit substantive rights, nor invalidate the act subject to the time limit. See Amherst-Pelham Regional School Committee v. Department of Education, 376 Mass. 480, 496 (1978) (cases collected); Liberty Mutual Ins. Co. v. Acting Commissioner of Insurance, 265 Mass. 23, 29 (1928); and Treasurer of the County of Norfolk v. *234 County Commissioners of Norfolk, 7 Mass.App.Ct. 368, 372 (1979). Therefore I DENY the ECRB’s motion to dismiss the appeal on this ground.
2. As to the merits, in Massachusetts and in most jurisdictions the principle of promissory or equitable estoppel will usually not operate against governmental bodies. The Massachusetts decisions are longstanding and consistent. See especially Doris v. Police Commissioner of Boston, 374 Mass. 443, 449-50 (1978); Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 161-64 (1977); Elbe File & Binder Co. v. City of Fall River, 329 Mass. 682, 685-86 (1953); Attorney General v. Methuen, 236 Mass. 564, 578-79 (1921); Harrington v. Fall River Housing Authority, 27 Mass.App.Ct. 301, 307-08 (1989); Outdoor Advertising Board v. Sun Oil Co. of Pennsylvania, 8 Mass.App.Ct. 872, 873 (1979); and DiGloria v. Chief of Police of Methuen, 8 Mass.App.Ct. 506, 515-16 (1977).
A practical purpose underlies this “government nonestoppel principle." Harrington v. Fall River Housing Authority, 27 Mass.App.Ct. at 307. The errors of government officers, especially their actions in excess of their proper authority, cannot defeat the public interest embodied in the statutes and rules which the officers have violated. Attorney General v. Methuen, 236 Mass. at 578-79 (leading general statement). The government may correct its errors of commission and omission in order to fulfill a public purpose, despite the reliance of third parties upon those errors. The underlying purpose may concern public safety or welfare, e.g. Doris v. Police Commissioner of Boston, 374 Mass. at 449-50 (the need for municipal police officers to reside reasonably close to their duty stations); Building Inspector of Lancaster v. Sanderson, 372 Mass. at 162-63 (enforcement of the municipal zoning code after a lapse); Outdoor Advertising Board v. Sun Oil Co. of Pennsylvania, 8 Mass.App.Ct. at 873 (enforcement of environmental and aesthetic land use standards). Or it may concern the integrity or preservation of public finances. E.g. Elbe File and Binder Co. v. Fall River, 329 Mass. at 685-86 (mayor may not commit city to exorbitant lease expenditures unauthorized by city council); Harrington v. Fall River Housing Authority, 11 Mass.App.Ct. at 307-08 (housing authority cannot be bound by its mistaken promise to guarantee rental obligations of certain tenants to private landlords). Or the purpose may concern the integrity of public employment standards (a blend of both public welfare and public financial objectives). DiGloria v. Chief of Police of Methuen, 8 Mass.App.Ct. at 515-16 (police chiefs wrongful maintenance of an impaired officer on “injured” payroll status does not permit the officer to remain).
In the present case the Commonwealth’s retirement system legislation has set certain boundaries upon membership. General Laws c. 32, §3(8) (b), does not permit former members to rejoin the system if they have already begun to draw upon or to receive their retirement payments. This provision appears intended to preserve pension funds and possibly to provide administrative clarity. The statute embodies a public policy. The mistakes of an administrative body or official cannot override its purpose despite the unfortunate reliance of a third party such as Mr. Moynahan. In such circumstances the duty of the officials is to correct the mistake and to mitigate any harm to the innocent reliant as fully as possible within the limits of the law. G.L.c. 32, §20(5)(c). Outdoor Advertising Board v. Sun Oil Co. of Pennsylvania, 8 Mass.App.Ct. at 872. The ECRB has undertaken that course here by reimbursement to Moynahan of his custodian retirement deductions and by restoration of his call firefighter retirement payments.
Finally, I have examined closely the CRAB decision of Hembrow v. State Board of Retirement, Docket No. CR-1229 (1978), invoked by Mr. Moynahan as authority for binding the ECRB to the higher retirement allowance. In Hembrow, the retiring state employee relied upon her supervisor to deliver her executed application for superannuation benefits to the State Retirement Board. He negligently failed to do so. As a result, she lost nine months of retirement payments. In the circumstances CRAB held her blameless and advanced her retirement date by nine months as a matter of fairness.
For several reasons, I cannot view Hembrow as authority for imposing the principle of promissory estoppel upon the ECRB in the present case. First, Hombrow did not involve a promise or a quasi-contractual representation by a public agency in excess of its authority; it involved ministerial negligence by a supervisor. CRAB appears to have wanted to make whole, or to compensate, Ms. Hembrow for the harm caused by that negligence, and not to estop the State Retirement Board for any unauthorized representation to her. In that light, the case is factually distinguishable. It does not violate the principle of governmental nonestoppel.
Second, even if CRAB’s action in Hembrow were the application of estoppel against the State Retirement Board, it would not have the stature of precedent. Hembrow never reached the courts. It did not generate any decision at the trial or appellate level. If it had done so as an estoppel case, I must conclude that the overwhelming force of judicial precedent collected above would have produced a reversal of CRAB’s ruling as an attempted estoppel order.
ORDER FOR JUDGMENT
For the foregoing reasons the court ORDERS the entry of Judgment of affirmance of the decision of the Contributory Retirement Appeal Board dated March 21, 1994.