## BOARD OF SELECTMEN OF HANSON *vs.* MELODY LINDSAY.

Suffolk. May 3, 2005. - June 29, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Real Property,* Sale, Conservation restriction, Bona fide purchaser. *Municipal Corporations,* Use of municipal property, Town meeting, Conservation commission. *Bona Fide Purchaser.*

Where a town voted at its annual meeting to accept for conservation purposes a deed to a certain parcel of land which it owned, the vote evidenced the town's intent to impose a conservation restriction on the parcel, but where the town took no further action after the vote and no instrument creating a conservation restriction on the property was ever filed with the registry of deeds, the town continued to hold the parcel as part of its general corporate property, and the town's tax custodian could convey it to a bona fide purchaser at a public action without having to comply with art. 97 of the Amendments to the Massachusetts Constitution or G. L. c. 40, § 15A. [504-509]

In a civil action brought by a town's board of selectmen seeking a declaration of the town's rights as to a parcel of land that the defendant had purchased at a public auction, the judge did not err in granting judgment on the pleadings in favor of the defendant, where the complaint was legally insufficient to raise a claim pertaining to the defendant's status as a bona fide purchaser for value. [509-510]

CIVIL ACTION commenced in the Land Court Department on March 29, 2002.

The case was heard by *Alexander H. Sands, III,* J., on motions for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard P. Bowen* (*Jackie A. Cowin* with him) for the plaintiff.

*George E. Lane, Jr.* (*William R. Tuttle* with him) for the defendant.

*Thomas F. Reilly,* Attorney General, *& Nora J. Chorover,* Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

SPINA, J. In this case, we consider the legal effect of a March 1, 1971, vote at the annual meeting of the town of Hanson (town) "to accept for conservation purposes, a deed, or deeds, to" a 3.98 acre parcel of land identified as lot 7 on plan 93 of the town's tax maps (locus). On June 22, 1998, the town's treasurer and tax possession custodian (tax custodian) sold the locus to Melody Lindsay at a public auction. On March 29, 2002, the town, acting by and through its board of selectmen, commenced an action against Lindsay, seeking a declaration of its rights as to the locus pursuant to G. L. c. 185, § 1 (*k*), and G. L. c. 231A. In its verified complaint, the town asserted that the sale of the locus to Lindsay was invalid and void because it did not comply with art. 97 of the Amendments to the Massachusetts Constitution, which mandates that the disposal of land designated for conservation purposes be approved by two-thirds of the Legislature.[1] On cross motions for judgment on the pleadings, a judge in the Land Court allowed Lindsay's motion and denied the town's motion, concluding, inter alia, that Lindsay was the owner of the locus. The case was transferred, sua sponte, from the Appeals Court. The town now contends that the judge erred in concluding that the 1971 vote did not ef-

---

[1]Article 97 of the Amendments to the Massachusetts Constitution, approved and ratified on November 7, 1972, superseded art. 49 of the Amendments, but preserved the right of the people to enjoy the natural resources of the Commonwealth. It provides, in pertinent part, as follows:

"The people shall have the right to clean air and water, freedom from excessive and unnecessary noise, and the natural, scenic, historic, and esthetic qualities of their environment; and the protection of the people in their right to the conservation, development and utilization of the agricultural, mineral, forest, water, air and other natural resources is hereby declared to be a public purpose.

"The general court shall have the power to enact legislation necessary or expedient to protect such rights.

". . .

"Lands and easements taken or acquired for such purposes shall not be used for other purposes or otherwise disposed of except by laws enacted by a two thirds vote, taken by yeas and nays, of each branch of the general court."

fectively transfer the locus to the care and custody of the town conservation commission (commission) because the vote was not recorded in the Plymouth County registry of deeds (registry of deeds), and there was no deed of conveyance to the commission; that the sale of the locus to Lindsay was valid despite a lack of compliance with art. 97 and with G. L. c. 40, § 15A; and that Lindsay's motion for judgment on the pleadings should be allowed even though there was a disputed issue of fact as to whether she was a bona fide purchaser for value. For the reasons that follow, we affirm.[2]

1. *Background.* The town acquired title to the locus by a tax taking in December, 1957, and a treasurer's deed dated May 10, 1960. The instrument of taking and the deed were recorded in the registry of deeds. See G. L. c. 60, § 80. Both the town and Lindsay agree that, under the 1960 deed, the town did not acquire the locus for a specific purpose but, rather, held it as general corporate property until 1971. As such, the town could "dispos[e] of such property under [G. L. c. 40, § 3], or in any other manner authorized by law." G. L. c. 60, § 77B.

Following the March 1, 1971, annual meeting at which the town voted unanimously "to accept for conservation purposes, a deed, or deeds, to" the locus, no further action was taken by the town in connection with this vote. The locus remained on the town's list of tax possessions. In 1998, the town's tax custodian circulated to the departments within town hall, including the commission, a list of the properties that she planned to auction, including the locus. The tax custodian, who had no knowledge of the 1971 vote, did not receive information from any department that the locus had been designated as conservation land and was to be retained for such use.

The town alleged in its complaint that Lindsay's "agent" at the auction was John Aiello, who was a member of the commission. Lindsay, by and through Aiello, successfully purchased the locus with a bid of $10,000. The locus was conveyed to Lindsay by a deed executed on July 24, 1998, and recorded in the registry of deeds on August 3, 1998.

2. *Effect of the 1971 town meeting vote.* The town contends

[2]We acknowledge the amicus brief filed by the Attorney General on behalf of the Commonwealth, supporting the position of the town.

that the judge erred in concluding that the 1971 vote did not effectively transfer the locus to the commission because it was not recorded in the registry of deeds. The town argues that no statute, bylaw, or regulation requires that such a vote be recorded or that there be a deed "conveying" the locus to the commission. Rather, the town asserts that the 1971 vote, alone, placed the locus under the custody and control of the commission for the particular purpose of maintaining it as conservation land. As such, the town continues, the 1998 sale of the locus to Lindsay was invalid because there was no compliance with art. 97 and G. L. c. 40, § 15A. We agree with the town that the 1971 *vote* did not have to be filed with the registry of deeds. However, we conclude that such vote evidenced an intent by the town to impose a conservation restriction on the locus, and that an instrument creating such a property restriction had to be filed with the registry of deeds in order for the town's interest to prevail over that of any subsequent bona fide purchaser for value.

There is no dispute between the parties that under the 1960 treasurer's deed, executed pursuant to G. L. c. 60, § 80, the locus was held by the town as part of its general corporate property and could be used for different purposes in the event of changes in the nature or the needs of the town. This was the only deed that appeared in the chain of title of the locus between 1960 and 1998. Pursuant to G. L. c. 60, § 77B, "the selectmen of any town which holds property acquired by foreclosure of tax titles or acquired under [G. L. c. 60, § 80,] may appoint a custodian who shall have the care, custody, management and control of all property heretofore or hereafter so acquired by said . . . town. . . . The custodian, acting on behalf of the . . . town, may, notwithstanding any provision of law, ordinance or by-law inconsistent herewith, sell at public auction any such property" after providing proper notice of the sale. In accordance with this statutory provision, the tax custodian here determined in 1998 that the locus should be sold at auction.[3] General Laws c. 60, § 77B, further states that "[t]his section shall not be construed to prevent a . . . town from disposing of

---

[3]Neither the town nor Lindsay has challenged the authority of the tax custodian to convey property on behalf of the town.

such property under [G. L. c. 40, § 3], or in any other manner authorized by law."

Pursuant to G. L. c. 40, § 3, "[a] town may hold real estate for the public use of the inhabitants and may convey the same by a deed of its selectmen thereto duly authorized, or by a deed of a committee or agent thereto duly authorized . . . and may make such orders as it may deem necessary or expedient for the disposal *or use* of its corporate property" (emphasis added). General Laws c. 40, § 3, further provides that "[a]ll real estate . . . of the town, *not by law or by vote of the town placed in the charge of any particular board,* officer or department, shall be under the control of the selectmen, except as is otherwise provided in this section or [G. L. c. 40, § 9, pertaining to building space for veterans' organizations and armories]" (emphasis added). It is the inhabitants of a town, acting at a town meeting, who have the power to encumber and dispose of real estate, with certain limited exceptions, pertaining to leases, that are not material in this case. See *Bowers* v. *Board of Appeals of Marshfield,* 16 Mass. App. Ct. 29, 32 (1983).

Here, the inhabitants of the town exercised that power in 1971 by unanimously voting "to accept for conservation purposes, a deed" to the locus. Nothing in the specific language of this vote and no related circumstances suggest that the locus was placed under the custody and control of the commission. Contrast *Cranberry Growers Serv., Inc.* v. *Duxbury,* 415 Mass. 354, 355 (1993) (property placed under control of conservation commission where town acquired portion of premises by deed that conveyed property "for the uses and purposes of [Duxbury's] Conservation Commission"); *Harris* v. *Wayland,* 392 Mass. 237, 241 (1984) (property placed under control of school committee where warrant for special town meeting, "coupled with all the attendant circumstances, was sufficient to indicate that the town intended to place the property in the charge of the school committee"). Rather, the locus was under the control of the board of selectmen, which the town authorized to execute a deed designating the locus for conservation purposes, effectively imposing a conservation restriction on the property.

General Laws c. 184, § 31, provides, in pertinent part, as follows:

"A conservation restriction means a right, either in perpetuity or for a specified number of years, whether or not stated in the form of a restriction, easement, covenant or condition, *in any deed, will or other instrument* executed by or on behalf of the owner of the land or in any order of taking, appropriate to retaining land or water areas predominantly in their natural, scenic or open condition or in agricultural, farming or forest use . . . ." (emphasis added).

Pursuant to G. L. c. 184, § 32, "[s]uch conservation . . . restrictions are interests in land and may be acquired by any governmental body or such charitable corporation or trust which have power to acquire interest in the land, in the same manner as it may acquire other interests in land." Moreover, approval for a conservation restriction shall be evidenced by a certificate from the secretary of environmental affairs "duly recorded or registered." *Id.* The purpose of the deed, the recordable instrument creating the conservation restriction, and the certificate is to put potential purchasers on notice that the land is encumbered, namely that it has been specifically designated for conservation purposes, and that it is entitled to all of the constitutional and statutory protections that are afforded conservation land. Further, "[c]onservation restrictions may . . . run with the land on a single recording and provide for the perpetual protection of conservation features." *Chatham Conservation Found., Inc.* v. *Farber*, 56 Mass. App. Ct. 584, 585 n.3 (2002).

Recording acts have two separate, but interconnected, purposes. "First and foremost, they are designed to protect purchasers who acquire interests in real property for a valuable consideration and without notice of prior interests from the enforcement of those claims." 14 R. Powell, Real Property § 82.01[3], at 82-13 (M. Wolf ed. 2000). "The second purpose of recording acts is fundamental to the achievement of the first. To make the system self-operative and to notify purchasers of existing claims, the recording acts create a public record from which prospective purchasers of interests in real property may ascertain the existence of prior claims that might affect their interests." *Id.* at 82-14. "[T]he effective operation of the entire process of conveyancing and title assurance depends upon a recording system that excludes from recordation as few instruments as possible." *Id.* at § 82.02[3], at 82-86 to 86-87.

In this Commonwealth, "[b]ecause of the long-recognized inevitability and ubiquity of controversies over land, the Massachusetts Bay Colony enacted a recording act as early as 1640 for the declared purpose that '[e]very man may know what estate or interest other men may have in houses, lands or other hereditaments they are to deal.' " *Long* v. *Wickett*, 50 Mass. App. Ct. 380, 397 n.13 (2000), citing A.L. Eno & W.V. Hovey, Real Estate Law § 2.1, at 13 n.1 (3d ed. 1995). As a matter of law, a use restriction, such as here for conservation purposes, is an encumbrance on land. See *Coons* v. *Carstensen*, 15 Mass. App. Ct. 431, 433 (1983). "One is entitled to rely upon the record to ascertain the existence of an encumbrance that must be recorded in order to prevail over a *bona fide* purchaser. He may deal with the title to the land as he finds it upon the record" (emphasis in original). *Lamson & Co.* v. *Abrams*, 305 Mass. 238, 244 (1940). Cf. *Houghton* v. *Rizzo*, 361 Mass. 635, 643 (1972) ("the proliferation of implied rights in or servitudes upon real estate, which cannot be readily ascertained by an examination of the records of the appropriate registry of deeds or of the Land Court, will serve only further to erode the integrity and reliability of such records and will be a subversion of the fundamental purpose for which such records are required to be made and maintained"); *McCusker* v. *Goode*, 185 Mass. 607, 611 (1904) ("It is the policy of our law in regard to the recording of deeds, that persons desiring to buy may safely trust the record as to the ownership of land, and as to encumbrances upon it which are created by deed"); *Popponesset Beach Ass'n* v. *Marchillo*, 39 Mass. App. Ct. 586, 587-588 (1996) (defendants' lots not burdened by restrictions where nothing in chains of title placed defendants on notice of such encumbrances on land).

Here, the fact that the town took *no* further action after the 1971 vote and that no deed was prepared for and accepted by the town means that the locus never became specifically designated for conservation purposes in the first instance. Cf. *Muir* v. *Leominster*, 2 Mass. App. Ct. 587, 591-592 (1974). The 1971 vote merely expressed the town's interest in dedicating the locus to conservation purposes. The vote did not formally impose such a restriction on the land, but it expressly anticipated

the execution of a deed for that purpose. To conclude that this could be accomplished solely by vote, without recordation of any instrument, would eviscerate the purposes of our recording acts. Consequently, the 1971 vote, alone, had no legal effect on the locus. The town continued to hold the locus as part of its general corporate property, and the tax custodian could convey it to Lindsay at a public auction in accordance with G. L. c. 60, § 77B, and G. L. c. 40, § 3. Because the locus was not held for a specific purpose, namely conservation, compliance with the provisions of art. 97 and G. L. c. 40, § 15A, was not required.

3. *Status of Lindsay as bona fide purchaser.* The town contends that the judge erred in granting Lindsay's motion for judgment on the pleadings because of the existence of a disputed issue of material fact whether she was a bona fide purchaser for value.[4] The town asserts that Lindsay had actual notice of the 1971 vote and, as such, would have known of the town's intent to place a conservation restriction on the locus. The town points to the fact that Lindsay's "agent" at the auction was John Aiello, who was a member of the commission in 1998 and, consequently, must have known about the conservation designation and so informed his client. We note that the record is silent as to whether any member of the commission knew about the conservation designation at the time the locus was sold to Lindsay.

"The effect of a motion for judgment on the pleadings is 'to challenge the legal sufficiency of the complaint.' " *Sampson* v. *Lynn*, 405 Mass. 29, 30 (1989), quoting *Minaya* v. *Massachusetts Credit Union Share Ins. Corp.*, 392 Mass. 904, 905 (1984). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Mass. R. Civ. P. 8 (a) (1), 365 Mass. 749 (1974), the purpose of which is "to give fair notice of the claims . . . of the parties." Reporters' Notes to Mass. R. Civ. P. 8, Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 111 (Lexis 2004). See *Ciccone* v. *Smith*, 3 Mass. App. Ct. 733, 734 (1975). One claiming that another is not a bona fide purchaser has the burden of

---

[4] In his memorandum of decision, the judge indicated that the parties' motions for judgment on the pleadings would not be treated as motions for summary judgment.

proof. See *Richardson* v. *Lee Realty Corp.*, 364 Mass. 632, 634 (1974); *Tramontozzi* v. *D'Amicis*, 344 Mass. 514, 517 (1962). When dealing with an unrecorded instrument, actual notice is required, and that term has been strictly construed. See *Richardson* v. *Lee Realty Corp.*, *supra* at 635. See also *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 549 n.51 (1997) (in disputes over title to real property, "the rule is that the party claiming under an unrecorded deed must prove that the subsequent purchaser had actual knowledge or notice of such a deed"). "Knowledge of facts which would ordinarily put a party upon inquiry [notice] is not enough." *McCarthy* v. *Lane*, 301 Mass. 125, 128 (1938).

The complaint here did not clearly state any facts that would have given Lindsay fair notice of a claim by the town that she was *not* a bona fide purchaser and, therefore, that the town was entitled to relief on that basis.[5] The only allegation the town made was that "[a]t the time of the 1998 Sale, Aiello was a member of the Hanson Conservation Commission." The town's complaint was legally insufficient to raise a claim pertaining to Lindsay's status as a bona fide purchaser. Consequently, this issue has been waived. The allowance of Lindsay's motion for judgment on the pleadings was not erroneous.

*Judgment affirmed.*

---

[5]We note that the town did not mention this issue in its memorandum of law in support of its motion for judgment on the pleadings.