Trainor, J.
The plaintiffs, Virginia B. Smith and other Westfield residents (collectively, residents), appeal from a judgment for the defendants, the city of Westfield and others (collectively, Westfield), which vacated a preliminary injunction that, in effect, prohibited a school construction project at the John A. Sullivan Memorial Playground (playground).[3] The residents challenge the judgment for two reasons. First, they argue that the playground *81 was sufficiently dedicated to invoke the protection of art. 97 of the Amendments to the Massachusetts Constitution, notwithstanding the fact that no documents were ever recorded that dedicated the land for art. 97 purposes.[4] Second, the residents contend that the judge erred in concluding that a Statewide comprehensive outdoor recreation plan (SCORP) contradicts Mahajan v. Department of Envtl. Protection, 464 Mass. 604 (2013). We affirm, as we conclude that the playground has not been designated for an art. 97 purpose in a manner sufficient to invoke its protection.
Background. This matter came before a Superior Court judge on cross motions for judgment based on an agreed statement of facts. We summarize those facts, reserving some facts for later discussion. On November 13, 1939, Westfield took title to the land in question for the purpose of satisfying a tax debt pursuant to G. L. (Ter. Ed.) c. 60, §§ 53 and 54. In 1957, Westfield passed an ordinance recognizing the land as a playground and naming it the John A. Sullivan Memorial Playground. In 1979, the Federal Land and Water Conservation Fund (LWCF) awarded Westfield a grant that, in part, was used to upgrade the playground. A SCORP was required for Westfield to be eligible for that grant. See 16 U.S.C. § 4601-8(d) (1976).[5] The SCORP, which the residents assert applies to this matter, states: “Land acquired or developed with [LWCF] funds become protected under . . . [art. 97].” See Massachusetts Outdoors 2006: Statewide Comprehensive Outdoor Recreation Plan, Executive Office of Energy and Environmental Affairs 4, http://www.mass.gov/eea/docs/eea/dcs/massoutdoor2006 .pdf [https://perma.cc/T3D7-4EKN] (2006 SCORP).[6] In 2010, Westfield endorsed an open space and recreation plan that designated the playground as “open space.” In August, 2011, the playground was determined to be surplus property, and the city council voted to have it transferred to the school department in order to construct an elementary school. In the hearing on the *82 parties’ cross motions, the residents conceded that no document was ever recorded in the registry of deeds designating the playground as land devoted to the “conservation, development and utilization of the agricultural, mineral, forest, water, air, and other natural resources.” Art. 97 of the Amendments to the Massachusetts Constitution.
Discussion. 1. Article 97 protection. The residents maintain that the playground is subject to art. 97 protection and that Westfield acted beyond its authority when it approved and permitted construction of a school building at the playground without obtaining a two-thirds vote of the General Court as required by art. 97.[7] “The critical question to be answered is not whether the use of the land incidentally serves purposes consistent with art. 97, or whether the land displays some attributes of art. 97 land, but whether the land was taken for those purposes [emphasis in original], or subsequent to the taking was designated for those purposes [emphasis supplied] in a manner sufficient to invoke the protection of art. 97.” Mahajan v. Department of Envtl. Protection, 464 Mass. at 615. Article 97 protection also may arise where, following the taking for purposes other than art. 97, the land is specifically designated for art. 97 purposes by deed or other recorded restriction. See Selectmen of Hanson v. Lindsay, 444 Mass. 502, 508-509 (2005). See also Toro v. Mayor of *83 Revere, 9 Mass. App. Ct. 871, 872 (1980) (applicability of art. 97 depended on whether the land had been conveyed “to the conservation commission ... to maintain and preserve it for the use of the public for conservation purposes”). We agree with the motion judge’s finding that Westfield did not specifically designate, in a manner sufficient to invoke the protection of art. 97, i.e., by deed or other recorded restriction on the land, the playground for art. 97 purposes and that the playground was not taken for those purposes. Westfield’s subsequent actions of passing an ordinance naming the playground and endorsing the open space and recreation plan in 2010 are insufficient to subject the playground to art. 97 protection. Compare Selectmen of Hanson v. Lindsay, supra at 508-509; Mahajan v. Department of Envtl. Protection, supra at 615-616.
2. 2006 SCORP. The residents contend that because the 2006 SCORP considers land rehabilitated with LWCF grants as being under the protection of art. 97,[8] the judge erred in determining that the acceptance of the LWCF grant did not subject the property to art. 97 protection. As the judge correctly stated, “[a] federal or state agency is not free to promulgate regulations which conflict with statutes passed by the state legislature or with the common law enunciated by the Supreme Judicial Court. See Purity Supreme, Inc. v. Attorney Gen[.], 380 Mass. 762, 774-775 (1980).” Moreover, the Supreme Judicial Court, as final arbiter of the Massachusetts Constitution, has interpreted art. 97 and defined its requirements. A Federal or State agency’s regulations cannot conflict with the Supreme Judicial Court’s interpretation of the Massachusetts Constitution. See Planned Parenthood League of Mass., Inc. v. Attorney Gen., 424 Mass. 586, 589-590 (1997). Accordingly, the 2006 SCORP cannot infringe upon the formalities for constitutional protection, as construed by the Supreme Judicial Court, by deeming the acceptance of an LWCF grant as creating art. 97 protection.
3. Prior public use doctrine. The residents argue that the prior public use doctrine requires the playground to be subject to art. 97 protection. We are not persuaded. “The prior public use doctrine holds that public lands devoted to one public use cannot be divert *84 ed to another inconsistent public use without plain and explicit legislation authorizing the diversion.” Mahajan v. Department of Envtl. Protection, 464 Mass. at 616 (quotation omitted). This doctrine is only applicable to land that is in fact devoted to public use. Id. at 617. Thus, as noted by Mahajan, in Muir v. Leominster, 2 Mass. App. Ct. 587, 588-589, 591 (1974), we “held the prior public use doctrine inapplicable to the sale for commercial purposes of a parcel of land, where that parcel had been conveyed to a city as a gift with no limitation on its use but was in fact used for thirty years as a playground and for other recreational purposes . . . [and] there had been neither prior legislative authorization of a taking for a particular purpose nor a prior public or private grant restricted to a particular purpose.” Ibid, (citation and quotation omitted). Accordingly, the prior public use doctrine, insomuch as it was adopted in the art. 97 context by the Supreme Judicial Court in Mahajan, does not subject the playground to art. 97 protection because that land had been conveyed to the city with no limitation on its use, and there was neither a taking for an art. 97 purpose nor a prior public or private grant restricting the land to an art. 97 purpose. See id. at 616-617.

Judgment affirmed.

The playground is commonly referred to as the Cross Street playground.

The residents therefore maintain that Westfield acted beyond its authority when it approved and permitted construction of a school building at the playground without obtaining a two-thirds vote of the General Court as required by art. 97.

We cite to the Federal statute in effect in 1979, the year that Westfield applied for and was awarded the grant. See now 54 U.S.C. § 200305(d) (Supp. II 2014).

We question, as the judge did below, whether the 2006 SCORP is applicable when the grant was sought and awarded in 1979. Nevertheless, we assume for purposes of this opinion only that the 2006 SCORP applies.

Article 97, which was approved and ratified on November 7, 1972, superseding art. 49, provides:
“The people shall have the right to clean air and water, freedom from excessive and unnecessary noise, and the natural, scenic, historic, and esthetic qualities of their environment; and the protection of the people in their' right to the conservation, development and utilization of the agricultural, mineral, forest, water, air and other natural resources is hereby declared to be a public purpose.
“The general court shall have the power to enact legislation necessary or expedient to protect such rights.
“In the furtherance of the foregoing powers, the general court shall have the power to provide for the taking, upon payment of just compensation therefor, or for the acquisition by purchase or otherwise, of lands and easements or such other interests therein as may be deemed necessary to accomplish these purposes.
“Lands and easements taken or acquired for such purposes shall not be used for other purposes or otherwise disposed of except by laws enacted by a two thirds vote, taken by yeas and nays, of each branch of the general court.”

See Massachusetts Outdoors 2006: Statewide Comprehensive Outdoor Recreation Plan, Executive Office of Energy and Environmental Affairs 4, http:// www.mass.gov/eea/docs/eea/dcs/massoutdoor2006.pdf[https://perma.cc/T3D7-4EKN] (“Land acquired or developed with [LWCF] funds become protected under the Massachusetts Constitution [Article 97]"’).